IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 35138

| | | |
|---|---|---|
| RALPH J. HENDERSON, an individual, | ) | |
| | ) | |
| Appellant, | ) | Pocatello, September 2009 Term |
| v. | ) | |
| | ) | 2010 Opinion No. 18 |
| HENDERSON INVESTMENT | ) | |
| PROPERTIES, L.L.C., an Idaho Limited | ) | Filed: February 19, 2010 |
| Liability Company, ROGER E. | ) | |
| HENDERSON, an individual and LISA A. | ) | Stephen W. Kenyon, Clerk |
| HENDERSON, an individual, | ) | |
| | ) | |
| Respondents, | ) | |
| | ) | |

Appeal from the Sixth Judicial District of the State of Idaho, Bannock County. Hon. Ronald E. Bush, District Judge.

The decision of the district court is <u>vacated</u>. No attorney fees are awarded on appeal.

Norman G. Reece, P.C., Chubbuck, for appellants. Norman Reece argued.

Cooper & Larsen, Chtd., Pocatello, for respondent. Ron Kerl argued.

_____

W. JONES, Justice

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant, Ralph Henderson (Ralph), his deceased wife, Lena Henderson (Lena), along with Respondents, their son, Roger Henderson (Roger), and daughter-in-law, Lisa Henderson (Lisa), created a business known as Henderson Investment Properties, L.L.C. (HIP). The sole purpose of HIP was to operate a Jimmie John's Gourmet Sandwich Shop in Pocatello, Idaho. When forming HIP, all four parties signed an Operating Agreement, which stipulated that Roger and Lisa were to manage HIP. Lena died on August 28, 2001, and in January of 2002, an amendment was made to the Operating Agreement, whereby Ralph obtained Lena's membership interest in HIP.

On July 27, 2005, Ralph filed a Complaint for Judicial Dissolution pursuant to I.C. § 53-643(1)(a). In his complaint, Ralph asserted that the two requisite elements to obtain judicial dissolution had been satisfied; the members were deadlocked in their management of HIP, and as a result of the deadlock, irreparable injury was or would be suffered by HIP. Ralph also sought judicial dissolution pursuant to I.C. § 53-643(1)(b). Ralph again claimed that the two necessary elements had been satisfied because Roger and Lisa had committed illegal, oppressive, or fraudulent acts, and consequently, irreparable injury had occurred or would occur to HIP.

On April 10, 2007, Ralph filed a complaint wherein he sought a declaratory judgment under I.C. § 53-641(1)(e). Ralph asserted that since more than 120 days had elapsed from the filing of the Complaint for Judicial Dissolution, pursuant to § 53-641(1)(e), Roger and Lisa were dissociated from HIP. Subsequently, on May 21, 2007, the district court consolidated the above actions. The trial began on July 6, 2007, and finished on July 8, 2007.

Shortly thereafter, on August 2, 2007, the district court issued its Memorandum Decision, Findings of Fact and Conclusions of Law. In its decision, the district court denied Ralph's request for judicial dissolution. The court held that under I.C. § 53-643(1)(a), there had been a deadlock in the management of HIP, but that HIP had not suffered irreparable injury, nor was it likely to occur. In addition, the district court held that under I.C. § 53-643(1)(b), there had been no illegal, oppressive, or fraudulent acts on the part of Roger and Lisa. As a result of its ruling, on November 7, 2007, the district court dismissed Ralph's claim for declaratory relief.

On February 12, 2008, the district court released its Memorandum Decision and Order on Motion for Fees and Costs. The Court ruled that Roger and Lisa were not entitled to attorney fees under I.C. §§ 12-120 or 12-121; however, the district court granted attorney fees and expenses under Article XIV(G) of the Operating Agreement. The court awarded attorney fees to Roger and Lisa for Ralph's dissolution action under I.C. §§ 53-643(1)(a) and (b), and Ralph's declaratory judgment action under I.C. § 53-641(1)(e). The Court awarded a total of $21,552.00. Following the award of fees, on March 21, 2008, Ralph filed an appeal.

**ISSUES ON APPEAL**

I.     Whether the district court abused its discretion when awarding attorney fees under Article XIV(G) of the Operating Agreement.

II.    Whether attorney fees should be granted on appeal under Article XIV(G) of the Operating Agreement.

STANDARD OF REVIEW

When reviewing a trial court's award of attorney fees, this Court applies an abuse of discretion standard. *U.S. Bank Nat'l Ass'n v. Kuenzli*, 134 Idaho 222, 228, 999 P.2d 877, 883 (2000) (citing *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 350–51, 766 P.2d 1227, 1231–32 (1988)). "To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason." *Lee v. Nickerson*, 146 Idaho 5, 9, 189 P.3d 467, 471 (2008).

## ANALYSIS

I. **The district court abused its discretion in awarding attorney fees under Article XIV(G) of the Operating Agreement.**

The district court concluded that Roger and Lisa were not entitled to an award of attorney fees pursuant to either I.C. § 12-120(3) or I.C. § 12-121. Rather, relying on Idaho R. Civ. P. 54(e)(1), the district court concluded that Roger and Lisa, as prevailing parties, were entitled to attorney fees under the terms of the Operating Agreement. This Court finds the award to be in error.

A. **The district court abused its discretion in awarding attorney fees for Ralph's judicial dissolution claim under I.C. §§ 53-643(1)(a) and (b).**

The district court first awarded attorney fees to Roger and Lisa for their successful defense of Ralph's dissolution action under I.C. §§ 53-643(1)(a) and (b). In awarding attorney fees under Article XIV(G), the district court provided two justifications: first, Ralph "sought to enforce a variety of Operating Agreement provisions;" and second, "But for the contract in the form of the Operating Agreement, there would have been no reason nor opportunity for Ralph to bring a lawsuit against the [sic] Roger and Lisa . . . ."

Ralph claims that Article XIV(G) of the Operating Agreement has not been satisfied because had the district court granted the requested relief, the Operating Agreement would govern a company that is no longer in existence. In addition, Ralph claims that evidence of Operating Agreement violations was offered to establish "irreparable injury," a required showing to obtain judicial dissolution under I.C. §§ 53-643(1)(a) and (b). The Operating Agreement stipulates that "irreparable injury" occurs when a provision of the Agreement is violated. Ralph

3

argues, thus, the Agreement violations were presented simply to establish an element of a statutory judicial dissolution action.

Roger and Lisa reiterate the district court's arguments and assert that the award of attorney fees was proper because Ralph's allegation of Operating Agreement violations amounted to an attempt to enforce provisions of the Agreement. Ralph and Lisa also repeat the district court's reasoning, that even if there is a distinction between a contract right and a statutory right, the statutory right would not exist but for the contract between the parties.

This Court finds that the district court abused its discretion in awarding attorney fees. The court properly recognized the discretionary nature of its decision. The district court also exercised reason; the court reasoned that Ralph alleged Operating Agreement violations as a basis for judicial dissolution, and that the allegations amounted to an attempt to enforce the Operating Agreement. The district court also reasoned that Article XIV(G) was implemented by the fact that "but for" the Operating Agreement there would not have been a lawsuit. The district court, however, did not satisfy the second prong of the test; the district court did not act consistently with Article XIV(G) of the Operating Agreement, the legal standard at issue. *See Lee*, 146 Idaho at 9, 189 P.3d at 471.

This appeal therefore demands interpretation of the Operating Agreement. Where the language of the contract makes the intentions of the parties clear, the interpretation and legal effect of the contract is simply a question of law. *Panike & Sons Farms, Inc. v. Smith,* 147 Idaho 562, 566, 212 P.3d 992, 996 (2009) (citing *Lickley v. Max Herbold, Inc.,* 133 Idaho 209, 211, 984 P.2d 697, 699 (1999)). When interpreting a term of a contract, this Court is obligated to view the entire agreement as a whole to discern the parties' intentions. *Id.*

Section XIV(G) of the Operating Agreement provides:

> **Attorneys' Fees.** In any action or proceeding brought to enforce any provision of this Agreement, or where any provision is validly asserted as a defense,[1] the successful party is entitled to recover reasonable attorneys' fees in addition to any other available remedy.

This provision is found in Section XIV, captioned as "General Provisions." Another provision of Section XIV reveals the meaning of the phrase "action or proceeding brought to enforce any provision of this Agreement." Section XIV(B) of the Operating Agreement reads:

---

[1] The district court did not find that Roger and Lisa "validly asserted" any provision of the Operating Agreement as a defense. Rather, the district court concluded that this was an "action or proceeding brought to enforce any provision of [the Operating Agreement]."

4

**Specific Performance.** The parties to this Agreement agree that irreparable damage would occur if any of the provisions of this Agreement were not performed in accordance with its specific terms or were otherwise breached. The parties agree that they are entitled to an injunction or injunctions to prevent breaches of this Agreement and to *specifically enforce the terms and provisions* in any United States court or any state having jurisdiction, in addition to any other remedy to which they are entitled at law or in equity.

(Emphasis added).

This provision of the Operating Agreement reflects the parties' intentions that an "action or proceeding brought to enforce any provision of this Agreement" would be for the purpose of promoting the continued existence of the business, not ending it. In the proceedings before the district court, Ralph did not seek to enforce the provisions of the Operating Agreement. Instead, he sought judicial dissolution which would terminate the Operating Agreement.

This is precisely how the district court interpreted these provisions when denying Ralph's request for judicial dissolution. At trial, Ralph argued that Section XIV(B) required the district court to find that violations of various provisions of the Operating Agreement satisfied the "irreparable injury" requirement of I.C. § 53-643. The district court rejected his argument, noting the incongruity of Ralph's reliance on this provision:

> [T]he statute contemplates that dissolution will occur because some act has caused "irreparable injury" or threatens to cause such injury, which therefore necessarily has the result of threatening the ability of the Company to continue to operate as a going-concern and, more significantly, threatens the existing value of the Company for its owner-members. Accordingly, dissolution is appropriate in such settings to protect the aggrieved members, who need to have some mechanism to protect against the further wasting or threatened wasting of the existing value of their ownership in the Company.
>
> By contrast, the use of the term "irreparable damage" in the Agreement is tied to actions that one or more aggrieved members might seek to enjoin or compel as a means of preserving, maintaining or even increasing the value of their ownership interest. Significantly, Article XIV(b) [sic] is titled "Specific Performance," *not* "Grounds for Dissolution." The "irreparable damage" refers to what might happen if "any of the provisions of this Agreement *were not performed in accordance with its specific terms* or were otherwise breached." (Emphasis supplied.) The clause goes on to say that the parties agree "that they are *entitled to an injunction* or injunctions t*o prevent breaches of this Agreement* and to *specifically enforce* the terms and provisions . . . ." (Emphasis supplied.) The emphasis is unmistakably upon ensuring that appropriate actions are taken by the parties to *maintain* the Company's business, not to end it. It is anomalous, therefore, to assign the meaning of an alleged violation under Article XIV(b) [sic] (which is deemed to be "irreparable damage" so as to expedite the availability of

5

specific performance or injunctive relief as a means of *continuing* the business) to the term "irreparable injury" under I.C. § 53-643, which is a mechanism for *terminating* the business.

(Citation omitted.)

The parties' contract specifies the standard which must be satisfied before an award of attorney fees is proper. The Operating Agreement unambiguously requires that the action must be "brought to enforce any provision of [the] Agreement." As Ralph's lawsuit did not seek to "enforce any provision of this Agreement," the standard agreed to by the parties was not satisfied. Therefore, the district court erred in awarding Roger and Lisa attorney fees for the dissolution action. *Zenner v. Holcomb*, 147 Idaho 444, 451, 210 P.3d 552, 559 (2009).

The district court also awarded attorney fees because it found that but for the Operating Agreement, Ralph would not have had an opportunity to bring a lawsuit. This theory is clearly incorrect, as it suggests that a prevailing party may be entitled to an award of attorney fees simply because of the existence of a contractual relationship between the parties. Idaho R. Civ. P. 54(e)(1) does not provide for an award of attorney fees in all cases involving a contract between the parties. Rather, the rule states that attorney fees may be awarded "when provided for by . . . contract." This Court has made it clear that entitlement to attorney fees is defined by the terms of the parties' contract:

> [T]his Court has held that when a "contract provision limits the award of attorney fees to a 'prevailing party,' the I.R.C.P. 54(d)(1) definition of 'prevailing party' [is] applicable. However, if the . . . contract sets forth a different standard, the determination of the award of attorney fees [is] based upon the . . . contractual standard, not the prevailing party standard of I.R.C.P. 54(d)(1)."

*Zenner*, 147 Idaho at 451, 210 P.3d at 559 (quoting *Farm Credit Bank of Spokane v. Wissel,* 122 Idaho 565, 569 n.4, 836 P.2d 511, 515 n.4 (1992)).

**B.    The district court abused its discretion in awarding attorney fees for Ralph's declaratory judgment claim under I.C. § 53-641(1)(e).**

The district court also awarded attorney fees to Roger and Lisa for their successful defense against Ralph's declaratory judgment claim under I.C. § 53-641(1)(e). Subsequent to filing for judicial dissolution, Ralph filed an action to obtain a declaratory judgment under I.C. § 53-641(1)(e). In the action, Ralph argued that Roger and Lisa were dissociated from HIP because a proceeding for dissolution had been commenced against Roger and Lisa more than 120 days earlier, and the proceeding had not been dismissed. As a result, Ralph argued that under I.C. § 53-641(1)(e), Roger and Lisa should have been dissociated from HIP.

6

Shortly after dismissing Ralph's judicial dissolution action, the district court dismissed Ralph's declaratory judgment action, and the district court subsequently awarded Roger and Lisa attorney fees for their defense of the claim.

On appeal, Ralph argues that the district court abused its discretion in granting Roger and Lisa their attorney's fees. Ralph argues that an action for dissolution pursuant to I.C. § 53-641(e), by its nature, is not an action to enforce the Operating Agreement. Ralph argues, under I.C. § 53-641(e), if a proceeding for dissolution is commenced against a member of a limited liability company and the proceeding has not been dismissed within 120 days, the member ceases to be a member.

Roger and Lisa argue that under I.C. § 53-641(e)(1), the Complaint for Judicial Dissolution was a "condition precedent" for Ralph to dissociate Roger and Lisa from HIP. Roger and Lisa argue, thus, Ralph's attempt to enforce provisions of the Operating Agreement in the Complaint for Judicial Dissolution was imputed into the Complaint for Declaratory Judgment. Roger and Lisa also argue that the district court properly recognized the underlying legal issues in the Complaint for Judicial Dissolution and the Complaint for Declaratory Judgment to be the same. Consequently, for the same reason attorney fees were granted for their successful defense of the dissolution action, Roger and Lisa argue that they were properly awarded fees for their successful defense of the declaratory judgment action.

This Court vacates the district court's award of attorney fees for Ralph's judicial declaration claim under I.C. § 53-641(e)(1), as the award amounted to an abuse of discretion. *See Lee*, 146 Idaho at 9, 189 P.3d at 471. The district court appreciated the fact that the award of attorney fees was within its discretion. The district court also exercised reason when it analogized the declaratory judgment action to the judicial dissolution action. The district court concluded that the legal issues in the declaratory judgment action were the same as those in the dissolution action, and consequently, attorney fees were warranted for the same reason. Again, however, the district court's award does not satisfy the second prong of the test because the court acted inconsistently with Article XIV(G).

The district court granted attorney fees for the declaratory judgment action because it believed the legal issues in the two actions, the dissolution action and the declaratory judgment action, to be the same; yet, the claims need to be analyzed separately. Contrary to the district court's belief, the actions do not contain similar legal issues. In awarding attorney fees for the

judicial dissolution action, the court relied upon the fact that Ralph claimed an array of Operating Agreement violations. The court reasoned that allegations of Operating Agreement violations amounted to an attempt to enforce Operating Agreement provisions. However, the legal issues within the declaratory judgment claim are different, negating the district court's reliance upon its award for the judicial dissolution action. Ralph did not claim an Operating Agreement violation in an attempt to obtain a declaratory judgment. Instead, Ralph merely sought to enforce his statutory right under I.C. § 53-641(1)(e). Ralph wrote in his complaint, "More than 120 days have elapsed from the filing of the 'Complaint for Judicial Dissolution.' Therefore," Ralph argued, "pursuant to I.C. §53-641(1)(e), [Roger and Lisa] are dissociated from HIP." Nowhere in the Complaint for Declaratory Judgment does Ralph claim an Operating Agreement violation as grounds to obtain relief. Accordingly, the district court's reliance upon its award of fees for the judicial dissolution action is unfounded.

## II.     This Court does not award attorney fees to Roger and Lisa Henderson on appeal.

Roger and Lisa claim they should be awarded attorney fees on appeal. Yet, as Roger and Lisa were not successful on appeal, attorney fees will not be awarded. Ralph did not ask for attorney fees on appeal.

## CONCLUSION

For the foregoing reasons, this Court vacates the district court's award of attorney fees to Roger and Lisa for Ralph's judicial dissolution claim under I.C. §§ 53-643(1)(a) and (b) and Ralph's declaratory judgment claim under I.C. § 53-641(1)(e). In addition, this Court does not award attorney fees on appeal. Costs to Appellant.

Chief Justice EISMANN and Justice HORTON **CONCUR.**


J. JONES, J., concurring in part and dissenting in part.

While I concur in Part IB of the Court's analysis pertaining to attorney fees for the declaratory judgment claim and Part II dealing with fees on appeal, I dissent with regard to the Court's holding in Part IA of the analysis relating to attorney fees for the judicial dissolution claim. My view is that the award of fees to Roger and Lisa was appropriate under the attorney fee provision (Article XIV(G)) of the Operating Agreement (Agreement).

Article XIV(G) provides for the recovery of reasonable attorney fees by the successful party in any action or proceeding either (1) brought to enforce any provision of the Agreement or

8

(2) where any provision of the Agreement is validly asserted as a defense. Although the district court placed more emphasis on the former ground, its decision on attorney fees did not ignore the latter ground. In reciting the position of Roger and Lisa with regard to their fee claim, the court first noted their request for fees under Idaho Code sections 12-120 and 12-121 and then noted, "[a]lternatively, they contend that the Operating Agreement expressly provides for recovery of attorney fees in any action brought to enforce a provision of the agreement or *where the agreement provides a successful defense to an action.*" (emphasis added) Thus, the district court recognized that Roger and Lisa were seeking fees under both grounds provided for in the attorney fee provision. The court went on to conclude that fees were appropriate because "Ralph sought to enforce a variety of Operating Agreement provisions, for the purpose of obtaining dissolution of the business entity, and he was unsuccessful in that pursuit." The fee award can be supported under either or both of the Article XIV(G) grounds.

In order to comprehend what the district judge was saying in his order granting attorney fees, one needs to refer to the memorandum decision wherein the judge made his determination that Ralph had failed to prevail on his dissolution claim. Ralph's dissolution complaint alleged that Roger and Lisa had violated a number of the provisions of the Agreement; that such acts were illegal, oppressive or fraudulent; and that the LLC had thereby suffered or would suffer irreparable injury. The claim alleged was in keeping with Idaho Code section 53-643(1)(b), which allows a district court to decree dissolution of a limited liability company "when it is established . . . [t]hat the acts of the managers or members in control of the limited liability company are illegal, oppressive or fraudulent and that irreparable injury to the limited liability company is being suffered or is threatened by reason thereof." However, at trial, rather than putting on proof to establish the statutory grounds for obtaining dissolution, Ralph utilized a shortcut under the Agreement. Article XIV(B) of the Agreement provides in pertinent part, "The parties to this Agreement agree that irreparable damage would occur if any of the provisions of this Agreement were not performed in accordance with its specific terms or were otherwise breached." Ralph hinged his case on this provision, asserting that "irreparable injury," as used in the statute, was synonymous with "irreparable damage," as provided in this provision. He sought to establish his case by showing that Roger and Lisa had breached various provisions of the Agreement, which under the language of this provision, would seem to automatically establish irreparable damage to the limited liability company.

9

The district court was initially swayed by this argument and, as a result, at the conclusion of Ralph's trial presentation the court denied Roger and Lisa's motion for involuntary dismissal. According to the court:

> At that time, the Court ruled that there was sufficient evidence to establish the prima facie elements of Ralph's claim and to rule in Ralph's favor, based on the evidence presented by the close of [Ralph's] case. However, after having heard the evidence presented in [Roger and Lisa's] case and having considered all the evidence with an opportunity for analysis, review and in full context, the Court has concluded that Ralph has not met his burden of proving a right to judicial dissolution by a preponderance of the evidence.
>
> At trial, and in argument both before and during trial, Ralph's counsel presented evidence intended to show that there had been violations of the operating agreement and that such violations were—under the specific language of Article XIV(b) of the Agreement—actions causing or threatening irreparable injury to the Company.

The court went on to find that Roger and Lisa had indeed committed violations of the Agreement, but determined that such violations did not cause or threaten to cause irreparable damage to the LLC. Rather, the court found that some of the violations of the Agreement had results that were more beneficial than detrimental to the company. The court again focused on the language of Article XIV(B), which Ralph had relied upon in his attempt to obtain dissolution, and concluded that the contractual term "irreparable damage" did not have the same meaning as the statutory term "irreparable injury." The court stated:

> As a matter of law, the Court concludes that the terms "irreparable damage" under Article XIV(b) and "irreparable injury" under I.C. § 53-643 are *not* synonymous. Accordingly, any actions alleged by Ralph to evidence alleged deadlock or illegal, oppressive or fraudulent actions must be supported by proof independent of the language of Article XIV(b) as to whether or not they have caused or threaten to cause irreparable injury. For the reasons set out in this Decision the Court rules that actions have not caused and do not threaten irreparable injury. (emphasis in original).

In sum, Ralph sought to obtain dissolution, not by attempting to show that Roger and Lisa had caused or threatened to cause irreparable injury to the limited liability company by reason of engaging in illegal, oppressive or fraudulent actions but, rather, by invoking a specific provision of the Operating Agreement in an attempt to show that they had caused irreparable damage to the company simply by failing to observe several provisions of the Agreement. Thus, Ralph invoked and asserted Article XIV(B) in hopes of establishing his dissolution claim by

10

employing a reduced evidentiary showing. He was unsuccessful in doing so. He has not appealed the district court's ruling on this critical issue and, therefore, this Court has no basis to review it. Under Article XIV(G), Ralph is liable for attorney fees to the successful party in the litigation—Roger and Lisa—because he invoked "any provision" of the Agreement in his attempt to secure dissolution. Although he did not directly seek to enforce the provision in question, he relied upon it, rather than the statutory standard of proof, in an attempt to obtain dissolution. That is, he sought to obtain statutory dissolution by enforcing his interpretation of a provision (Article XIV(B)) of the Agreement, rather than by relying upon the statutory language. Article XIV(B) is "any provision" of the Agreement within the meaning of Article XIV(G).

Looking at the other side of the same coin, Roger and Lisa were successful in their defensive effort to establish to the district court's satisfaction that they had not damaged the company within the meaning of Article XIV(B). The court validated their interpretation of this provision in light of the evidence they presented and, therefore, they validly and successfully asserted their reading of Article XIV(B). Again, Ralph has not challenged the district court's findings of fact, conclusions of law or decision on the merits of the dissolution claim and thus we will not disturb them on appeal. It is true that the district court did not mention the words "validly asserted" in its order regarding attorney fees, but all concerned were aware that this was the ground upon which Roger and Lisa successfully defended against the dissolution claim.[2] The district court's award of fees to Roger and Lisa on the dissolution claim is amply supported by the record, either under the first ground of the fee provision or under the second.

I would hold that the district judge did not abuse his discretion in awarding fees to Roger and Lisa for their successful defense of Ralph's judicial dissolution claim and affirm the fee award made with regard to that claim.

Justice BURDICK CONCURS.

---

[2] Even if the district court was required to specifically state that the fee award was based upon the valid assertion ground, the Court can apply the "right result, wrong reason," analysis we have often employed in such circumstances. *See Boise Tower Assoc., LLC. v. Hogland*, 147 Idaho 774, 782, 215 P.3d 494, 502 (2009) ("Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory.").