# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 37228

| | | |
|---|---|---|
| CODY SCHROEDER, | ) | |
| | ) | **Boise, May 2011 Term** |
| Plaintiff-Counterdefendant-Appellant, | ) | |
| | ) | **2011 Opinion No. 89** |
| v. | ) | |
| | ) | **Filed: August 4, 2011** |
| ERIK K. PARTIN, | ) | |
| | ) | **Stephen Kenyon, Clerk** |
| Defendant-Counterplaintiff- | ) | |
| Respondent. | ) | |

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

The district court's grant of judgment notwithstanding the verdict and the award of attorney fees are <u>vacated</u> and the case is <u>remanded</u> for proceedings consistent with this opinion.

Wright Brothers Law Office, PLLC, Twin Falls, for appellant. Brooke B. Redmond argued.

Jacobson Law Office, Twin Falls, for respondent. Victor L. Jacobson argued.

_____

HORTON, Justice.

This case arises from a contract for services between Erik Partin (Partin) and Cody Schroeder (Schroeder) under which Partin assembled a specialty car engine for Schroeder. A jury returned a verdict finding that Partin assembled the engine improperly and breached a performance agreement containing a valid liquidated damages clause. The district court granted Partin's motion for judgment notwithstanding the verdict (JNOV), holding that no reasonable jury could find the liquidated damages clause to be valid. The court awarded all attorney fees incurred in the litigation to both Partin and Schroeder as prevailing parties. Schroeder appeals the district court's grant of JNOV and the award of attorney fees to Partin. Each party requests attorney fees on appeal. We vacate the district court's grant of JNOV and award of attorney fees and award attorney fees and costs on appeal to Schroeder.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Schroeder is a classic car enthusiast who lives in California. Schroeder invests in classic cars and hires professionals to refurbish them. In 2006, Schroeder purchased a 1970 Barracuda and wanted to install a specialty engine in it. That fall, in order to avoid an eighteen-month delay in orders for manufactured engines, Schroeder hired Partin to assemble the engine. The parties originally agreed Schroeder would provide parts and pay Partin $950 to assemble the engine. Although Schroeder hoped Partin would build and install the engine within four or five months, the parties did not originally set a performance deadline.

The parties repeatedly pushed back deadlines for completion of the engine, in part because as assembly progressed, Partin discovered that new parts needed to be ordered. As early as December 2007, Schroeder urged Partin to timely complete the engine. In February or March of 2008, Partin told Schroeder that he would finish work on the Barracuda within "the next few months." Schroeder planned to visit Idaho in September 2008 and asked Partin to install the engine before the visit so that the Barracuda could be moved to another site for painting and detailing. Upon Schroeder's September visit, Partin reported that the engine was not in the vehicle because a component had cracked when he tried to install the engine. Schroeder was visibly frustrated when he left Partin's shop.

In response to Schroeder's evident frustration, Partin drafted and delivered to Schroeder a cover letter and an enclosed document (the Performance Agreement). The cover letter stated that Partin "decided to write up this Performance Clause so that you will have some reassurance" that the work on the car would be completed by October 8, 2008. The Performance Agreement stated:

> This is a binding performance contract stating that the delivery of [Schroeder's Barracuda] to Charlie's Auto [R]efinishing for painting, shall be no later than October 8, 2008. If delivery date is not met a penalty of $2,500.00 shall be incurred payable to owner of [the Barracuda]. Further penalty for non delivery by due date will be the sum of $100.00 a day for every day thereafter until said vehicle is delivered to Charlie's Auto Refinishing.

Partin signed the Performance Agreement on September 23, 2008. Schroeder signed the Agreement the next day and returned a copy to Partin. Although Schroeder had originally intended to recover the Barracuda from Partin in September, even if the engine work was incomplete, the Performance Agreement convinced Schroeder to allow Partin to finish the work.

2

Partin did not deliver the Barracuda to Schroeder on October 8, 2008. On November 21, 2008, Schroeder filed suit seeking damages for Partin's breach of contract. Partin delivered the Barracuda to Schroeder on December 23, 2008, seventy-five days after the date set forth in the Performance Agreement.[1] On February 3, 2009, Partin filed his answer and counterclaim.

Although the parties agreed Partin would perform the engine's crucial initial start-up, Schroeder hired a third party to perform the task, and almost immediately the engine demonstrated mechanical problems. Schroeder ultimately paid other mechanics to rebuild the Barracuda's engine. It took these professionals seven months to disassemble, reassemble, and install the engine. Partin asserted that he was not liable for the rebuild costs because he would have performed final tasks before the start-up that would have prevented the damage.

The case was tried to a jury, which received conflicting testimony on Schroeder's claim for damages due to Partin's delayed delivery of the Barracuda. Schroeder testified that he invested in the vehicle at a time of favorable market conditions, but that he became frustrated with Partin's delayed performance because market conditions began to deteriorate. Schroeder testified that the Performance Agreement:

> . . . is fair. The fact that this car had been in [Partin's] possession for two years already and the fact now again that it's late after the promised date as the market is dropping, you know, periodically it's still continuing to soften. I'm losing money every day that this car isn't getting done. That's why I was in – that's why it was so important for me to wrap this up and have some closure with this and get it into an autobody [sic] shop. A hundred dollars a day to me is a small price compared to, I mean, how much does it cost to rent a car for a day and he's had my car for two years.

However, on cross examination, Schroeder testified that the only damage he suffered was due to the need to rebuild the engine after the troubled start-up, and that he was not damaged by Partin's late performance.

Partin testified that he knew that the market for Barracudas was favorable when Schroeder purchased the car, but that the market dropped before he would have been able to finish the engine. Partin testified that he had executed similar performance agreements with other clients in the past, and that in this instance, he thought the terms of the Performance Agreement were "fair compensation."

---

[1] Partin asserts that he did not deliver the Barracuda sooner because he thought possession was his only means of protecting his inability to recover for unpaid parts and services.

3

Partin asserted that the Performance Agreement was unenforceable because it imposed a penalty and was not supported by consideration. The jury was instructed that the liquidated damages clause was enforceable unless either the liquidated damages did "not bear any reasonable relation to the damages actually sustained and [we]re exorbitant," or the liquidated damages were "not intended to be compensation for the consequences of any breach of the contract, but rather [we]re intended to be a penalty or to deter a party from not performing or as punishment against a party for breaching the contract." The jury was also instructed that Partin bore the burden of proving that the Performance Agreement was not enforceable.

The jury found Partin was liable to Schroeder for $7,578.11 for breaching the parties' contract for services by improperly assembling and installing the engine. The jury also found the Performance Agreement was supported by consideration, that it was an enforceable liquidated damages provision, and that Partin was liable to Schroeder for an additional $10,000 for breach of the Agreement. The jury found Schroeder liable to Partin for $9,221 in unpaid parts and services.

Partin moved the trial court for JNOV. Each party submitted a cost bill to the court and requested costs and attorney fees as the prevailing party. On November 25, 2009, the district court ruled on the motion for JNOV and the parties' requests for attorney fees in a single memorandum opinion addressing all post-trial motions.[2] The district court concluded its opinion by granting Partin's motion for JNOV and granting each party's request for attorney fees.

In ruling on Partin's motion for JNOV, the court found substantial evidence that the Performance Agreement was supported by consideration, but concluded that there was not substantial evidence to support the jury's finding that the Performance Agreement was enforceable. The court stated:

> In addressing this issue, the Court must focus on whether the liquidated damages fixed by the contract bear a reasonable relation to actual damages. The only testimony in this case concerning "actual damages" suffered by Schroeder was his generic testimony that the market value of barracuda [sic] cars with hemi [sic] engines was decreasing from the time that he _started_ the project until his receipt of possession of the vehicle in December 2008. There was no direct testimony of this "market decline" between September 2008 and December 2008 – the time relevant to the liquidated damage issue. His testimony that a "fair value" of

[2] The memorandum opinion concluded with a statement that an amended judgment would be entered consistent with the court's rulings on the various motions. There is no amended judgment in the appellate record. We have addressed the merits of this appeal because the district court's order granting Partin's motion for JNOV and granting each party's motion for an award of attorney fees is appealable pursuant to I.A.R. 11(a)(7).

4

damage was $100 per day based upon the daily "fair rental" value of a vehicle also does not support his position. He did not drive this vehicle and only intended to "flip" it. Schroeder argues that Partin achieved a benefit from continuing to possess the vehicle. The test for damages when evaluating a liquidated damages clause is the damage occasioned by the non breaching party . . . . Offsetting Partin's bill against the contract damage amount is likewise not the proper test when evaluating the "actual damages" sustained by Partin. There is no evidence upon which a jury could conclude how the sum of $2,500 represents a reasonable measure of damages for continued possession of the car for two weeks as compared to $100 per day thereafter. Simply stated, this jury did not have evidence that would permit them to make the valuation required by the jury instruction.

(emphasis original).

When considering the parties' requests for an award of attorney fees, the district court found that Schroeder prevailed on his claim for breach of the parties' contract for services, and that Partin prevailed on his counterclaim for unpaid costs and services. As neither party objected to the amount of attorney fees sought by the other, the court awarded both parties all attorney fees requested in their cost bills, pursuant to I.C. §12-120. Schroeder timely appealed.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of JNOV under the same standard the district court used in ruling on the motion. *Coombs v. Curnow*, 148 Idaho 129, 136, 219 P.3d 453, 460 (2009). Since the validity of a liquidated damages clause is a question of fact, an appellate court must affirm the fact finder unless the findings are clearly erroneous *Clampitt v. A.M.R. Corp.*, 109 Idaho 145, 149, 706 P.2d 34, 38 (1985). For the purpose of a motion for judgment notwithstanding the verdict, the moving party admits any adverse facts, and the Court must draw all inferences in the light most favorable to the nonmoving party. *Coombs*, 148 Idaho at 136, 219 P.3d at 460. Only the jury may weigh evidence and assess witness credibility. *Id.* A district court's grant of JNOV is only proper if reasonable minds could not reach the conclusion reflected in the jury's verdict. *Id.*

## III. ANALYSIS

A. **The jury's finding that the Performance Agreement is an enforceable liquidated damages clause was supported by substantial, competent evidence.**

A liquidated damage provision should be enforced:

in any case where the circumstances are such that accurate determination of the damages would be difficult or impossible, and provided that the liquidated damages fixed by the contract bear a reasonable relation to actual damages. But,

5

> where the forfeiture or damage fixed by the contract is arbitrary and bears no reasonable relation to the anticipated damage, and is exorbitant and unconscionable, it is regarded as a "penalty", and the contractual provision therefor is void and unenforceable.

*Graves v. Cupic*, 75 Idaho 451, 456, 272 P.2d 1020, 1023 (1954). If a liquidated damages clause is unenforceable, the non-breaching party is entitled to compensation for its actual damages. *City of Idaho Falls v. Beco Const. Co., Inc.*, 123 Idaho 516, 522, 850 P.2d 165, 171 (1993).

1. The district court erred in its application of the burden of proof.

The party asserting that a liquidated damages clause is unenforceable bears the burden of proving that the liquidated damages are not reasonably related to actual damages, and/or are exorbitant and unconscionable. *Howard v. Bar Bell Land & Cattle Co.*, 81 Idaho 189, 197, 340 P.2d 103, 107 (1959). In the present case, the district court found that Schroeder did not submit evidence of injury specifically related to Partin's breach of the Performance Agreement, and therefore "this jury did not have evidence that would permit them to make the valuation required by the jury instruction." The district court reasoned that although Partin bore the burden of proof, Partin did not bear the burden of production.

In so holding, the district court erred. A party's "'[b]urden of proof' encompasses both the burden of production and the burden of persuasion." *Cowan v. Bd. of Comm'rs of Fremont Cnty.*, 143 Idaho 501, 515, 148 P.3d 1247, 1261 (2006). Since Partin bore the burden of production, Partin would have to bear the consequences if the record did not reflect sufficient evidence for the jury to assess the validity of the Performance Agreement. However, in this case, the record contains substantial, competent evidence supporting the jury's determination that the Performance Agreement was enforceable.

2. The district court erred by granting JNOV.

The record contains substantial evidence upon which a reasonable jury could find that the terms of the Performance Agreement were reasonably related to the damages Schroeder might incur if the engine was not timely constructed and installed. Although not extensive, evidence of Schroeder's damages takes two forms. First, there is evidence that the Barracuda's market value dropped while Partin retained possession of the vehicle. "It is a settled rule in Idaho that the owner of property is a competent witness to its value, as he is presumed to be familiar with its value by reason of inquiries, comparisons, purchases and sales." *Weaver v. Village of Bancroft*, 92 Idaho 189, 193, 439 P.2d 697, 701 (1968). Schroeder testified that throughout the course of

his relationship with Partin, the Barracuda's market value fell. Although the district court found there was no evidence of a market decline during the period of the Performance Agreement, Schroeder testified that "after the promised date as the market is dropping, . . . I'm losing money every day that this car isn't getting done." Partin likewise acknowledged that the Barracuda market was strong when the parties initiated their contract for services. Thus, a reasonable jury could have determined that Schroeder was injured by a drop in the Barracuda's market value during the period that Partin failed to timely perform under the terms of the Performance Agreement.

Further, there is evidence that the Barracuda's fair rental value was approximately $100 per day. This Court has upheld as valid a liquidated damages clause in a contract for services entitling the purchaser to the daily rental value of the item being constructed. *Eldred v. C. L. Folkman Co.*, 93 Idaho 131, 134, 456 P.2d 775, 778 (1969). Although the record here did not contain direct evidence that the parties intended under the Performance Agreement to compensate Schroeder for the Barracuda's fair rental value, Schroeder testified that "[a] hundred dollars a day to me is a small price compared to, I mean, how much does it cost to rent a car for a day and he's had my car for two years." Based upon this testimony, a reasonable jury could conclude that the Barracuda's daily rental value was a reasonable means of compensating Schroeder for delayed possession of his vehicle.

Finally, a reasonable jury could find that the party who voluntarily and independently drafted a contract providing for liquidated damages in the event of breach would not impose upon himself an unreasonable or punitive means of assessing those damages. While courts respect parties' right to contract, a court in equity may find a liquidated damage clause unenforceable if it is unconscionable. *Clampitt*, 109 Idaho at 148, 706 P.2d at 37; *see also Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, ___, 246 P.3d 961, 974 (2010). Partin drafted the Performance Agreement upon his own volition. A reasonable jury could rationally find that Partin did not voluntarily draft, offer to Schroeder, and enter into a Performance Agreement so oppressively one-sided that no reasonable person would have agreed to be bound by its terms. Partin was intimately acquainted with the delays, difficulties, and costs associated with building and installing the Barracuda's engine and testified that the Performance Agreement was "fair compensation." A reasonable jury could conclude that the Agreement was a reasonable estimate of damages Schroeder would suffer in the event of Partin's breach.

7

The trial court found that Schroeder did not suffer any actual damage and that therefore the Performance Agreement was unenforceable. However, in evaluating the validity of a liquidated damages clause, the focus is on whether the provision bears a reasonable relation to the anticipated damages occasioned by a breach. *Graves*, 75 Idaho at 456, 272 P.2d at 1023. As one treatise explains,

> The advantages of stipulating in advance a sum payable as damages are manifold. For both parties, it may facilitate the calculation of risks and reduce the cost of proof. For the injured party, it may afford the only possibility of compensation for loss that is not susceptible of proof with sufficient certainty. For society as a whole, it may save the time of judges, juries, and witnesses, as well as the parties, and may cut the expense of litigation.

E. Allan Farnsworth, *Contracts* § 12.18 (1982). Thus, as long as a liquidated damages clause is intended at the outset to reasonably compensate a party for potential damages resulting from a breach, rather than to deter or punish the breach, the clause will be enforceable.[3]

In the present case, the closest the district court came to considering whether the Performance Agreement was a reasonable estimate of anticipated damage was to discount as a "fundamental flaw" the fact that the parties did not negotiate the Performance Agreement's terms. Yet the fact that Partin voluntarily and independently drafted the Performance Agreement weighs heavily in favor of a finding that Partin was aware of the difficulty of estimating the damage Schroeder would suffer if Partin did not timely deliver the Barracuda. Had Schroeder been the drafting party, and had Schroeder convinced Partin to endorse the Performance Agreement without modifying its terms, there would be a greater risk that the Agreement's terms were intended to be punitive. However, Partin was party to the existing contractual relationship for services, and was fully aware of the difficulties attendant to building and installing the Barracuda engine. Partin was aware that the Barracuda's market value was declining. Given that Partin possessed this knowledge, a reasonable jury could conclude that Partin drafted the Performance Agreement as a reasonable estimate of Schroeder's difficult-to-measure damages. Thus, we conclude that substantial evidence supported the jury's determination that the

---

[3] Where a provision uses the words "penalty" or "liquidated damages," courts uniformly look beyond the provision's plain language to determine its character. *E.g.*, *United States v. Bethlehem Steel Co.*, 205 U.S. 105, 119-20 (1907); *Weatherford v. Adams*, 251 P. 453, 456 (Ariz. 1926); *Grooms v. Rice*, 429 P.2d 298, 300 (Colo. 1967); *White Lakes Shopping Ctr., Inc. v. Jefferson Standard Life Ins. Co.*, 490 P.2d 609, 614-15 (Kan. 1971); *Dairy Farm Leasing Co., Inc. v. Hartley*, 395 A.2d 1135, 1138 (Me. 1978); *Traylor v. Grafton*, 332 A.2d 651, 660 (Md. 1975); *A-Z Servicenter, Inc. v. Segall*, 138 N.E.2d 266, 268-69 (Mass. 1956).

Performance Agreement was enforceable. We therefore vacate the district court's grant of JNOV and remand for reinstatement of the jury verdict in favor of Schroeder.

**B.      The district court erred by awarding the parties all attorney fees incurred in the litigation.**

This Court addressed the standard of review governing a district court's award of attorney fees in *Henderson v. Henderson Investment Properties, L.L.C.*, 148 Idaho 638, 227 P.3d 568 (2010):

> When reviewing a trial court's award of attorney fees, this court applies an abuse of discretion standard. "To determine whether there is an abuse of discretion this Court considers whether (1) the court correctly perceived the issue as one of discretion; (2) the court acted within the boundaries of such discretion and consistently with legal standards applicable to specific choices; and (3) the court reached its decision by an exercise of reason."

*Id*. at 639-40, 227 P.3d at 569-70 (quoting *Lee v. Nickerson*, 146 Idaho 5, 9, 819 P.3d 467, 471 (2008)) (internal citations omitted).

The district court observed that neither party "objected to the *amount* of claimed fees and costs." (Emphasis original). The court then held that "in the absence of some specific objection to the cost bills, the Court concludes that the costs of right and attorney fees claims shall be awarded to each party as requested."

> In determining which party to an action is a prevailing party and entitled to costs, the trial court shall in its sound discretion consider the final judgment or result of the action in relation to the relief sought by the respective parties. The trial court in its sound discretion may determine that a party to an action prevailed in part and did not prevail in part, and upon so finding *may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resultant judgment or judgments obtained.*

I.R.C.P. 54(d)(1)(B) (emphasis added). Thus, although the district court had discretion to award costs and fees to both Schroeder and Partin as prevailing parties, the court had a duty to apportion to each of the parties only the attorney fees related to the claims upon which each party prevailed. *Ramco v. H-K Contractors, Inc.*, 118 Idaho 108, 113, 794 P.2d 1381, 1386 (1990) ("the claims should be severed and costs analyzed separately for each."). The trial court's decision to award all attorney fees incurred by each party in connection with the litigation, without attempting to apportion those fees based upon the respective claims upon which each party prevailed, was inconsistent with the governing legal standard. Thus, the district court

abused its discretion. We vacate the district court's award of attorney fees and remand for the district court to apportion attorney fees and costs consistent with the requirement of I.R.C.P. 54.

The prevailing party in a civil action to recover on a commercial transaction "shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." I.C. § 12-120(3). Both parties acknowledge that this action flows from a commercial transaction. Schroeder is the prevailing party on appeal and therefore entitled to attorney fees pursuant to I.C. § 12-120(3). Partin did not prevail in this appeal and is therefore not entitled to an award of attorney fees.

## IV. CONCLUSION

We vacate the district court's order of November 25, 2009, granting Partin's motion for judgment notwithstanding the verdict and awarding all attorney fees incurred in the course of the litigation to each party. We remand this matter to the district court for further proceedings consistent with this opinion. Attorney fees and costs on appeal to Schroeder.

Chief Justice BURDICK and Justices EISMANN, J. JONES and W. JONES **CONCUR**.

10