## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 46184

ALSCO, INC., )
)
  Plaintiff-Counterdefendent- )
  Respondent, )
)
v. )    **Boise, December 2019 Term**
)
FATTY'S BAR, LLC, an Idaho limited )    **Opinion Filed: April 14, 2020**
liability company, )
)    **Karel A. Lehrman, Clerk**
  Defendant-Counterclaimant-Appellant, )
)
and )
)
CLAY ROMAN, an individual dba )
FATTY'S, )
)
  Defendant. )

Appeal from the District Court of the Fourth Judicial District of the
State of Idaho, Ada County. Steven Hippler, District Judge.

The ruling of the district court is <u>affirmed</u>. Costs and attorney fees
on appeal are <u>awarded</u> to Alsco.

Pare & Cozakos, PLLC, Boise, attorneys for Appellants. Shelly
Cozakos argued.

Jones Williams Fuhrman Gourley, P.A., Boise, attorneys for Respondent.
Derrick J. O'Neill argued.

---

BEVAN, Justice

### I. NATURE OF THE CASE

This appeal concerns the doctrine of successor liability and its applicability to a business
known as "Fatty's Bar" ("Fatty's"). Tons of Fun, LLC opened Fatty's in October 2010 and a short
time later its manager, Clay Roman, signed a textile services agreement (the "Agreement") with
Alsco, Inc. ("Alsco"). The Agreement contained an automatic renewal clause, by which the
Agreement would renew automatically for a period of 60 months if neither party terminated it in

1

writing at least 90 days before its initial expiration. Fatty's fell on difficult financial times, and closed for a period in January 2013. Soon after, Steven and Jennifer Masonheimer created a limited liability company called Fatty's Bar, LLC, and re-opened Fatty's in mid-February, 2013, continuing to receive textiles from Alsco. The Agreement automatically renewed in March 2016. In March 2017, Fatty's Bar, LLC terminated the Agreement, well before the 60-month term was set to expire.

Alsco then sued Fatty's Bar, LLC and Clay Roman, seeking damages based on a liquidated damages provision in the Agreement. After a court trial, the district court held that both Fatty's Bar, LLC and Roman, were jointly and severally liable to Alsco for damages under a liquidated damages clause that was also in the Agreement. Fatty's Bar, LLC appealed. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Alsco is a linen supply company headquartered in Salt Lake City, Utah, with a local office in Boise, Idaho. Alsco supplies textiles such as linens, uniforms, and cleaning supplies to various businesses. Alsco also services the businesses by picking up, laundering, and delivering the supplies on a regular (usually weekly) basis.

On October 13, 2010, Justin Zora filed a certificate of organization with the Idaho Secretary of State for a limited liability company called Tons of Fun, LLC. Zora listed himself as a member or manager on the filing. Later, Tons of Fun, LLC opened a bar called "Fatty's" located at 800 West Idaho Street, Suite 200, Boise, Idaho. Zora did not register Fatty's as a dba for Tons of Fun, LLC, but it was undisputed that Zora owned Tons of Fun, LLC, which, in turn, owned Fatty's. Tons of Fun, LLC owned some equipment and Zora also leased a liquor license and some equipment from Colby Smith to operate Fatty's. The equipment owned by Tons of Fun, LLC will be detailed below.

On March 11, 2011, Roman executed the Agreement with Alsco. The customer name on the Agreement is "Fatty's," and under Roman's signature is the title "Partner Owner." Roman testified he did not recall executing the Agreement but did not dispute that he did so under the belief that he was accepting service for a delivery. The Agreement was an "exclusive" agreement, providing that Alsco "shall be the exclusive supplier to Customer of the services and goods listed on the Schedule attached hereto, as such Schedule may be amended from time to time." The Agreement also contained the following relevant provisions:

2

**Term.** This Agreement shall remain in full force and effect for a period of 60 months, commencing on the date of installation of the goods, and shall be automatically renewed for consecutive 60 month periods thereafter unless either party shall give to the other party written notice of termination by registered mail at least 90 days prior to the expiration of the term then in effect.

. . . .

**Liquidated Damages.** Customer acknowledges that since Supplier owns the goods covered hereby and that such goods may be unique to Customer's requirements and that the value of such goods is depreciating with time, the damages which Supplier may sustain as a result of Customer's breach or premature termination of this Agreement would be difficult, if not impossible, to determine. The parties therefore agree that in the event of Customer's failure to timely pay the fees and charges provided for herein, or in the event of any other breach of premature termination of this Agreement by Customer, Customer shall pay to Supplier as liquidated damages, and not as a penalty, a sum equal to the number of unexpired weeks remaining in the term then in effect multiplied by fifty percent (50%) of the average weekly charge for goods and services during the 10 weeks immediately preceding such failure to pay, breach or premature termination. The parties further agree that this formula is reasonable.

In December 2012, Tons of Fun, LLC began experiencing financial difficulties and had to shut Fatty's down for a time due to a liquor license violation. Tons of Fun, LLC was also unable to secure a new lease for the space occupied by Fatty's. Zora began searching for a financial partner and asked Steven Masonheimer ("Steven") if he was interested in assisting. Steven and his wife Jennifer Masonheimer ("Jennifer") owned a limited liability company called The Drink, LLC, which owned another local bar in Boise called "The Drink." Zora and Roman both worked at The Drink. Notably, Alsco provided linen services to The Drink under a contract—also signed by Roman—identical to the Agreement at issue for Fatty's. Even so, Steven testified that he never saw the agreement between The Drink and Alsco until the current lawsuit had been initiated.[1]

Steven declined Zora's offer to become a financial partner, but he and Zora did discuss opening what they called a new business at the same location of Fatty's, with Zora as the manager. On January 3, 2013, the Masonheimers filed a certificate of organization with the Idaho Secretary of State for "Fatty's Bar, LLC." When the documents were filed, Jennifer claimed she accidentally listed Zora as a member of Fatty's Bar, LLC after she misinterpreted the term "manager;" however,

---

[1] Shortly after Alsco filed this action for breach of contract over Fatty's, the Masonheimers closed The Drink. In October 2017, Alsco contacted the Masonheimers and informed them that The Drink had violated its contract with Alsco for premature termination. Upon reviewing the contract, the Masonheimers decided to make payments through the end of the contract term rather than risk a lawsuit for breach of contract.

3

on January 15, 2013, Jennifer amended the certificate of organization and removed Zora's name as a member manager of Fatty's Bar, LLC.

Fatty's Bar, LLC negotiated a new five-year lease for the space occupied by Fatty's. Fatty's Bar, LLC also purchased the liquor license and some equipment that Tons of Fun, LLC had been leasing from Colby Smith. In January 2013, Fatty's Bar, LLC temporarily shut down Fatty's for about two months to remodel the space. Upon reopening, Fatty's Bar, LLC retained most of the employees but hired a new security team. Zora was hired back as the general manager. Fatty's Bar, LLC kept the name, "Fatty's," used the same signage, equipment, and vendors that Tons of Fun, LLC had used while operating Fatty's.

Once Fatty's Bar, LLC reopened Fatty's, Alsco continued to perform under the Agreement, making weekly deliveries and pick-ups. At some point, Jennifer contacted Alsco to change the billing process under the Agreement from cash-on-delivery to monthly statements sent to Fatty's Bar, LLC's address. Jennifer was also listed as the customer representative for Fatty's in Alsco's system. Beginning in April 2013, Alsco sent billing statements for its services to Fatty's Bar, LLC's address and Fatty's Bar, LLC paid those statements for nearly four years.

The district court also found that each statement Alsco sent to Fatty's Bar, LLC contained the total balance owing and the following language: "The services for which these charges are made are being furnished to you pursuant to a service agreement between our company as supplier and the above named customer." In addition, after taking ownership of Fatty's, Fatty's Bar, LLC amended the schedules under the written Agreement on at least one occasion to request new items or add inventory.[2]

In August 2013, Fatty's Bar, LLC and Zora parted ways and Fatty's Bar, LLC executed an asset purchase agreement with Tons of Fun, LLC/Justin Zora. Fatty's Bar, LLC agreed to pay $10,000 for the following equipment owned by Tons of Fun, LLC, as set forth on the inventory

---

[2] The district court originally found that Fatty's Bar, LLC amended the schedules on at least three occasions. Fatty's Bar, LLC challenged this finding in its motion to reconsider, arguing no evidence supported it. The district court cited several "Schedule As" in the record where new items were added to the inventory and held that it was reasonable to infer that after Fatty's Bar, LLC assumed the Alsco Agreement, because it communicated with Alsco on at least three occasions, leading to a new Schedule A each time. Yet because the schedules were not dated, the court recognized they could have been executed before Fatty's Bar, LLC took over. Still, there was at least one Schedule A dated March 29, 2013, while Fatty's Bar, LLC was operating Fatty's. The district court found that even if this were the only schedule executed it would not have altered the district court's holding that Fatty's Bar, LLC exercised its power to amend the Agreement, whether it did it one time or three times.

list attached to the asset purchase agreement: "all televisions and brackets, beer pong tables, exterior and interior signage, lighting, sound equipment, decorations, electronic equipment, liquor/alcohol, fixtures (stationary or built in), glass wear [sic], and anything with the Fatty's logo on it." After Zora left, Roman returned to work as the manager for Fatty's Bar, LLC.

On March 11, 2016, the Agreement automatically renewed for another 60 months after no party gave written notice terminating it. Fatty's Bar, LLC continued to accept and pay for services under the Agreement for another year, until Fatty's Bar, LLC found another vendor that could provide the same goods and services at a lower price. Fatty's Bar, LLC terminated the Agreement with Alsco at that time.

On May 2, 2017, Alsco filed a verified complaint alleging breach of contract against Clay Roman, an individual d/b/a Fatty's, and Fatty's LLC, an Idaho Limited Liability Corporation. Alsco amended the complaint the next day, changing the names of the defendants to Clay Roman, an individual d/b/a Fatty's, and Fatty's Bar, LLC, an Idaho Limited Liability Corporation. In it, Alsco alleged "[u]pon information and belief, FATTY'S BAR, LLC became the successor to Clay Roman d/b/a Fatty's in 2013."

The case proceeded to a bench trial on April 10 and 11, 2018. Following the close of Alsco's case, Fatty's Bar, LLC moved for a directed verdict[3], which the district court denied. After the trial concluded the district court issued its findings of fact and conclusions of law. The court held that Fatty's Bar, LLC was liable to Alsco for breach of contract under the theory of successor liability because it impliedly assumed the Agreement. Further, under the Agreement the district court held Fatty's Bar, LLC and Roman, jointly and severally liable to pay liquidated damages of $23,206.46. Fatty's Bar, LLC moved to reconsider, which the district court denied. The district court also awarded Alsco $1,513.37 in costs and $26,766.00 in attorney fees, apportioned 80% to Fatty's Bar, LLC and 20% to Roman. Fatty's Bar, LLC now appeals to this Court.

### III. ISSUES ON APPEAL

1. Whether the district court erred in holding that Fatty's Bar, LLC was a successor in interest to Tons of Fun, LLC when Alsco did not plead a successor liability claim naming Tons of Fun, LLC?.

---

[3] Fatty's Bar, LLC originally thought the case would be tried to a jury, and thus styled its motion as one for directed verdict. The district court noted that the proper motion in a court trial would be a motion for involuntary dismissal under I.R.C.P. 41(b)(2). Counsel for Fatty's Bar, LLC recognized this and noted that they were making a "41(b) motion," but that the "standard under 41(b) is similar to that of directed verdict."

**2.** Whether the district court abused its discretion by concluding that Fatty's Bar, LLC was a successor in interest to Tons of Fun, LLC?

**3.** Whether the district court abused its discretion by holding that Fatty's Bar, LLC impliedly assumed the Agreement?

**4.** Whether the district court erred by holding the statute of frauds was satisfied for the Agreement?

**5.** Whether the district court erred in determining Alsco met its burden for an award of liquidated damages?

**6.** Whether the district court abused its discretion in awarding attorney fees and costs to Alsco?

**7.** Whether Fatty's Bar, LLC should be awarded attorney fees on remand?

**8.** Whether either party is entitled to attorney fees on appeal?

### IV. STANDARD OF REVIEW

"The review of a trial court's decision after a court trial is limited to ascertaining 'whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions of law.'" *Griffith v. Clear Lakes Trout Co.*, 143 Idaho 733, 737, 152 P.3d 604, 608 (2007) (quoting *Idaho Forest Indus., Inc. v. Hayden Lake Watershed Improvement Dist.*, 135 Idaho 316, 319, 17 P.3d 260, 263 (2000)). This Court will affirm a trial court's findings of fact unless those findings are clearly erroneous. *Id.*; I.R.C.P. 52(a)(7). Findings of fact that are supported by substantial and competent evidence are not clearly erroneous—even in the face of conflicting evidence in the record. *Kelly v. Wagner*, 161 Idaho 906, 910, 393 P.3d 566, 570 (2017). "Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion." *Id.* (quoting *Lamar Corp. v. City of Twin Falls*, 133 Idaho 36, 42–43, 981 P.2d 1146, 1152–53 (1999)). Finally, because of the trial court's special role to weigh conflicting evidence and judge the credibility of witnesses, "[t]his Court will 'liberally construe the trial court's findings of fact in favor of the judgment entered. ...'" *Id.* (quoting *Oregon Mut. Ins. Co. v. Farm Bureau Mut. Ins. Co. of Idaho*, 148 Idaho 47, 50, 218 P.3d 391, 394 (2009)).

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

On a motion for reconsideration, the district court "must consider any new admissible evidence or authority bearing on the correctness of an interlocutory order . . . . [But the motion] need not be supported by any new evidence or authority." *Jackson v. Crow*, 164 Idaho 806, 811, 436 P.3d 627, 632 (2019) (quoting *Fragnella v. Petrovich*, 153 Idaho 266, 276, 281 P.3d 103, 113 (2012)). The district court must apply the same standard of review that the court applied when deciding the original order that is being reconsidered. *Id.*

6

Finally, the doctrine of successor liability stems from equitable principles, and fairness is the prime consideration in application of the doctrine. *Rego v. ARC Water Treatment Co. of Pa.,* 181 F.3d 396, 401 (3rd Cir. 1999); *Criswell v. Delta Air Lines, Inc.,* 868 F.2d 1093, 1094 (9th Cir. 1989). *See also Celestica, LLC v. Commc'ns Acquisitions Corp.*, 126 A.3d 835, 838 (N.H. 2015) ("Claims of successor liability . . . are equitable in nature."). "When one party is seeking recovery in equity, the trial court is vested with [broad] discretion in determining the 'equities' between the parties." *Lunneborg*, 163 Idaho at 867, 421 P.3d at 198 (internal quotations omitted). On appeal we must review whether the four-prong standard for discretionary review has been met. That is, whether the trial judge:

> (1) Correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Id*.

## V. ANALYSIS

At the outset we recognize that the application of successor liability to a given set of facts is a fact-intensive exercise in a legal field nearly uncharted by this Court. That said, it is also an area of law fraught with potential pitfalls. As one commentator recognized:

> Successor liability law is mostly composed of state common law case-by-case decisions. These decisions fundamentally seek to balance two competing, and often conflicting, policy goals: to provide a necessary remedy to injured parties, often tort claimants, and to provide transactional clarity and certainty for business parties engaged in fundamental corporate transactions. As it has developed to date, however, successor liability law is so varied and unpredictable that it is not only a trap for the unwary, but a trap for the very wary, as well.

John H. Matheson, *Successor Liability*, 96 Minn. L. Rev. 371, 372–73 (2011).

Such a trap may have caught the appellants here. Even so, we recognize and emphasize that this is an area of the law in which the trial court has broad discretion, and in which we are making a narrow decision based on (1) the record before us, and (2) the deferential standard of review that applies to such equitable results.

A.      **Fatty's Bar, LLC was put on notice that Alsco was pleading a claim of successor liability.**

Fatty's Bar, LLC first argues that the district court erred in concluding that it could be liable under a theory of successor liability because Alsco never pled or argued that Fatty's Bar, LLC was

7

a successor in interest to Tons of Fun, LLC, the owner of Fatty's when the Agreement was executed. Instead, Alsco consistently argued that Fatty's Bar, LLC became a successor to Clay Roman d/b/a Fatty's in 2013. Fatty's Bar, LLC argues that Alsco carried the burden of proof at trial and needed to name the correct predecessor corporation in its pleadings to sustain a successor liability claim. Thus, Fatty's Bar, LLC argues Alsco waived any claim that Fatty's Bar, LLC was liable for breach of contract as successor in interest to Tons of Fun, LLC.

In general, a complaint must state claims upon which relief may be granted, and pleadings should be liberally construed in the interest of securing "a just, speedy and inexpensive resolution of the case." *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010); *see also* I.R.C.P. 1(b). The emphasis is to ensure that a just result is accomplished, rather than requiring strict adherence to rigid forms of pleading. *Seiniger Law Office, P.A. v. N. Pac. Ins. Co.*, 145 Idaho 241, 246, 178 P.3d 606, 611 (2008) (internal citation omitted). "Though this Court will make every intendment to sustain a complaint that is defective, e.g., wrongly captioned or inartful, a complaint cannot be sustained if it fails to make a short and plain statement of a claim upon which relief may be granted." *Brown*, 148 Idaho at 807, 229 P.3d at 1169 (quoting *Gibson v. Ada Cnty. Sheriff's Dep't*, 139 Idaho 5, 9, 72 P.3d 845, 849 (2003)). "The key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." *Id*. Thus, so long as a complaint makes a short and plain statement of a claim upon which relief may be granted, this Court has recognized that the "complaint can be sustained despite its defect in misnaming a party." *Youngblood v. Higbee*, 145 Idaho 665, 669, 182 P.3d 1199, 1203 (2008).

First, Alsco claims that Fatty's Bar, LLC's argument is procedurally deficient because it was raised for the first time in its motion for reconsideration. "[A]n issue may be considered waived if raised for the first time in a motion for reconsideration." *AIA Servs. Corp. v. Idaho State Tax Comm'n*, 136 Idaho 184, 188, 30 P.3d 962, 966 (2001) (citing *State v. Rubbermaid, Inc.*, 129 Idaho 353, 357, 924 P.2d 615, 619 (1996)). Still, when an issue has been directly addressed by the court below the merits may be reached on appeal. *State v. DuValt*, 131 Idaho 550, 553, 961 P.2d 641, 644 (1998). In denying Fatty's Bar, LLC's motion for reconsideration, the district court rejected the argument that is now being raised on appeal:

> In its pleadings, ALSCO sought to hold Fatty's Bar, LLC liable under the contract under a successor liability theory, although it asserted the predecessor Clay Roman, d/b/a Fatty's. As is often the case following discovery, ALSCO later took the position that Fatty's Bar, LLC became a successor in interest to whatever entity ran

Fatty's prior [sic] the formation of Fatty's Bar, LLC, whether it be Justin Zora and/or Tons of Fun and/or Clay Roman d/b/a Fatty's. This argument was revealed in its opposition memorandum to Fatty's Bar, LLC's motion for summary judgment, its pre-trial brief, its jury instructions and its opening statement. This argument was consistent with Steven Masonheimer's own understanding, as expressed in his December 21, 2017 declaration: "I was not sure exactly who the owner of the business was, but later believed it to be Clay Roman or an entity called Tons of Fun, LLC that I believed Mr. Roman was part owner in." Going into trial, Fatty's Bar, LLC's predecessor was a disputed fact for the [c]ourt to determine, and the [c]ourt concluded—based on the evidence and testimony presented—that it was Tons of Fun, LLC.

Ultimately, the district court determined that Fatty's Bar, LLC was put on notice by the pleadings that Alsco sought to hold it liable under the Agreement based on a theory of successor liability, even if Alsco first guessed wrong on the predecessor's identity.

We hold that the district court properly concluded that Fatty's Bar, LLC was on notice that Alsco was pleading a claim of successor liability implicating Fatty's Bar, LLC for succeeding whoever the previous owner of Fatty's was. Under Idaho's liberal notice pleading standard, "[t]he key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." *Brown*, 148 Idaho at 807, 229 P.3d at 1169. The distinction that Fatty's Bar, LLC is trying to make on appeal—that Alsco was required to name the correct predecessor when pleading a successor liability claim—does not alter the fact that Fatty's Bar, LLC was on notice that a claim of successor liability was pled against it, even if it was inartfully asserted in the original pleadings. Indeed, Fatty's Bar, LLC responded to the amended complaint and asserted the affirmative defense that "it was not a party to the contract at issue in this case, and does not meet the definition of a successor to any party to the contract." "[W]here a defendant's answer includes a defense to an alleged claim, that answer may be deemed sufficient evidence that a plaintiff's complaint placed the defendant on notice of that pleading." *Brown*, 148 Idaho at 810, 229 P.3d at 1172. We hold that Fatty's Bar, LLC was on notice that Alsco pled a claim of successor liability against it.

B. **The district court's factual finding that Fatty's Bar, LLC was a successor in interest to Tons of Fun, LLC is supported by substantial evidence**

Fatty's Bar, LLC next contends that the district court erred when it found Fatty's Bar, LLC to be a successor in interest to Tons of Fun, LLC because Fatty's Bar, LLC was not a purchasing corporation of Tons of Fun, LLC. That said, resolving this question is not governed solely by the legal point that Fatty's Bar, LLC makes.

9

As noted above, successor liability is generally considered an equitable doctrine. *Criswell*, 868 F.2d at 1094; *Rego*, 181 F.3d at 401 (observing that successor liability "is derived from equitable principles"); *Ed Peters Jewelry Co., Inc. v. C & J Jewelry Co., Inc.*, 124 F.3d 252, 267 (1st Cir. 1997) ("successor liability is an equitable doctrine, both in origin and nature"); *Uni-Com Nw., Ltd. v. Argus Pub. Co.*, 737 P.2d 304, 314 (Wash. Ct. App. 1987). "[A] trial court's exercise in applying equitable principles requires recourse to principles of justice to correct or supplement the law as applied to particular circumstances, including the judicial prevention of hardship that would otherwise ensue from the literal interpretation of a fair-minded application of a trial court's discretion." *Lunneborg*, 163 Idaho at 867, 421 P.3d at 198 (internal quotations and brackets omitted). Cases involving claims of successor liability thus require a trial judge to weigh the competing equities of the case and make a reasoned and informed decision. As a result, appellate courts are deferential in reviewing a trial court's equitable decisions such as those made by the district court here. *See id.* at 863, 421 P.3d at 194 ("In these cases, the trial court is responsible for determining factual issues that exist with respect to this equitable remedy and for fashioning the equitable remedy.").

To determine whether the district court abused its discretion, this Court applies the four-part *Lunneborg* test set forth above. We review whether the district court acted consistently with the legal standards applicable to the specific choices available to it – and whether the district court's decision falls within the outer boundaries of that discretion. *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194.

Fatty's Bar, LLC argues in multiple ways that the district court erroneously assumed that Fatty's Bar, LLC bought all or substantially all the assets of Tons of Fun, LLC, and thereby erroneously concluded that Fatty's Bar, LLC was a successor of Tons of Fun, LLC. First, Fatty's Bar, LLC argues that it bought "all" assets for Fatty's from Colby Smith, not from Tons of Fun, LLC, because it paid Smith $130,000 to lease the liquor license and $40,000 for other assets at Fatty's location; as such, it argues that Fatty's Bar, LLC could not have purchased all or substantially all the assets from *Tons of Fun, LLC*. This same contention was made to the district court below, but the court properly rejected it, recognizing that any assets Fatty's Bar, LLC purchased from Colby Smith for the operations of Fatty's do not relate to those assets that Fatty's Bar, LLC purchased from Tons of Fun, LLC. The district court properly noted that the focus of

the analysis must remain on the interconnectedness between Fatty's Bar, LLC and Tons of Fun, LLC.

"Substantial evidence is more than a scintilla of proof, but less than a preponderance. It is relevant evidence that a reasonable mind might accept to support a conclusion." *Kelly v. Kelly*, 165 Idaho 716, 730, 451 P.3d 429, 443 (2019) (quoting *Ehrlich v. DelRay Maughan, M.D., P.L.L.C.,* 165 Idaho 80, 83, 438 P.3d 777, 780 (2019)). Substantial evidence does not require that the evidence be uncontradicted. *SilverWing at Sandpoint, LLC v. Bonner Cnty.,* 164 Idaho 786, 794, 435 P.3d 1106, 1114 (2019) (citation omitted). Rather, the evidence need only be of sufficient quantity and probative value that reasonable minds could conclude that the fact finder's conclusion was proper. *Id.*

The substantial evidence found by the district court is that in August 2013, Fatty's Bar, LLC executed an asset purchase agreement directly with Tons of Fun, LLC. Under the agreement, Fatty's Bar, LLC agreed to pay $10,000 for the equipment owned by Tons of Fun, LLC that was connected to its operation of Fatty's. The purchase included all the assets of the business, as itemized in the inventory list attached to the asset purchase agreement. Thus, despite Fatty's Bar, LLC's efforts to claim this agreement did not involve "all or substantially all" of the assets of Tons of Fun, LLC, it was reasonable for the district court to conclude that an agreement specifying "*all* televisions and brackets, *all* beer pong tables, *all* exterior and interior signage, *all* lighting, *all* sound equipment, *all* decorations, *all* electronic equipment, *all* liquor/alcohol, *all* fixtures (stationary or built in), *all* glass wear, and *anything* with the Fatty's logo on it" constituted substantially all of Tons of Fun, LLC's assets. (Emphasis added).

Still, Fatty's Bar, LLC argues that its agreement with Tons of Fun, LLC was only executed to settle any ownership Zora was claiming to the "Fatty's sign" and to make sure Zora could "not come back against Fatty's [Bar], LLC." However, this view was rejected by the district court in favor of Alsco based on the substantial evidence in the record. This Court cannot reweigh that evidence on appeal. *Thurston Enterprises, Inc. v. Safeguard Bus. Sys., Inc.*, 164 Idaho 709, 721, 435 P.3d 489, 501 (2019). The question is whether Fatty's Bar, LLC, purchased all or substantially all of Tons of Fun, LLC's assets. There is no evidence in the record that any assets held by Tons of Fun, LLC were not transferred to Fatty's Bar, LLC. The district court was "responsible for determining factual issues that exist with respect to [successor liability] and for fashioning the equitable remedy." *Lunneborg*, 163 Idaho at 863, 421 P.3d at 194. Based on the evidence, the

11

district court did not abuse its discretion when it held that Fatty's Bar, LLC purchased or was the transferee of all or substantially all of Tons of Fun's assets. Thus, we affirm the district court's conclusion that Fatty's Bar, LLC was a successor in interest to Tons of Fun, LLC.

**C.     The district court did not abuse its discretion when it held that Fatty's Bar, LLC impliedly assumed the Agreement.**

Having concluded that substantial evidence supports the district court's conclusion that Fatty's Bar, LLC was a successor in interest to Tons of Fun, LLC, we must now assess the district court's legal conclusion in holding that Fatty's Bar, LLC is obligated under the written Agreement between Tons of Fun, LLC and Alsco.

The general rule, which is well settled in other jurisdictions, is that where one company sells or otherwise transfers all its assets to another company, the latter is *not* liable for the debts and liabilities of the transferor. 15 William Meade Fletcher, *Cyclopedia of the Law of Corporations,* § 7122 (Perm. ed. 2008) (collecting cases); *Cayne v. Washington Tr. Bank*, 125 F. Supp. 3d 1128, 1145 (D. Idaho 2015) (citing *Uni-Com.*, 737 P.2d at 311) ("a corporation purchasing the assets of another corporation does not, by reason of the purchase of assets, become liable for the debts and liabilities of the selling corporation."). We recognize this general principle and adopt it in a general sense in Idaho. However, the trap for the unwary in these cases is that successor liability also depends on the *particular facts and legal duties at stake in each case*; as a result, a buyer of assets "may be a successor for some purposes and not for others." *Indiana Elec. Workers Pension Benefit Fund v. ManWeb Servs., Inc.*, 884 F.3d 770, 776 (7th Cir. 2018); *Howard Johnson Co., Inc. v. Detroit Local Joint Exec. Bd., Hotel & Rest. Emp. & Bartenders Int'l Union, AFL-CIO*, 417 U.S. 249, 262, n. 9 (1974) (noting "[t]here is, and can be, no single definition of 'successor' which is applicable in every legal context."). Thus, a court acting in equity may make a discretionary decision that is within the outer limits of its discretion, but that goes against the general rule cited by Fatty's Bar, LLC.

There are four recognized exceptions which may require a successor entity to be liable as a successor: (1) the purchaser expressly or impliedly agrees to assume the liability; (2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the seller; or (4) the asset transfer is for the fraudulent purpose of escaping liability. *Cayne*, 125 F. Supp. 3d at 1145–46. Here, the district court held that Fatty's Bar, LLC impliedly assumed liability for the Alsco Agreement, so the focus of our review is on that exception alone.

12

"[P]roof of an implied assumption of contractual liabilities is a heavily fact-intensive exercise." *Cayne*, 125 F. Supp. 3d at 1148. "An implied assumption requires consideration of all the circumstances, such as the subject matter of the contract, the assignee's acts and words, and whether he acquiesced in the terms of the contract, performed its obligations, or accepted its benefits." *Id*. at 1148–49. "In order for a promise to be implied, the conduct or representations relied upon must evidence an intention on the part of the purchasing company to assume the old corporation's liabilities in whole or in part." Fletcher, *supra,* § 7124.

That said, Fatty's Bar, LLC rightly points out that an agreement will not be implied merely from the fact that a new corporation has voluntarily paid some debts of the old corporation, without further manifestation of an intent to pay all of its debts. *Uni-Com.*, 737 P.2d at 311–12.

> "[I]n order that a promise may be implied, on the part of a corporation, to pay the debts of another corporation, to the property and franchises of which it has succeeded by a valid purchase, the conduct or representations relied upon must show such an intention. The presence of such an intention depends on the facts and circumstances of each case. . . . However, the mere fact that the new corporation has voluntarily paid some of the debts of the old corporation is no ground for inferring that it assumed the latter's debts . . . ."

*Id.* (internal citations omitted).

The district court found that this exception applied, and required Fatty's Bar, LLC to be responsible for the debt under the Agreement because the subject matter of the agreement, and Fatty's Bar, LLC's acts and words showed "there was acquiescence in the terms of the contract . . . ." *Cayne*, 125 F. Supp. 3d at 1148.

Fatty's Bar, LLC argues that the district court erred when it determined Fatty's Bar, LLC impliedly assumed the Agreement with Alsco for four reasons. First, Fatty's Bar, LLC alleges that Alsco needed to present some evidence showing an intent by Fatty's Bar, LLC to pay the debts of Tons of Fun, LLC and that a "fortuitous debt payment is not enough." Yet Fatty's Bar, LLC's continuous acceptance of and payment for Alsco's services for years after Tons of Fun, LLC ceased to exist can hardly be considered a "fortuitous debt payment." Fatty's Bar, LLC, cites *Uni-Com.*, 737 P.2d at 312, to support its position, but that case is inapt. The debt at issue there was avoided by the successor company because while it paid "some of the debts of the old corporation," after it took over, the successor company made no "further manifestation of an intent to pay all of [the old corporation's] debts." *Id*. Here, as the district court again found in its factual findings,

13

Fatty's Bar, LLC continued to use and pay for all of Alsco's services under the Agreement for four years before it decided to terminate Alsco's services due to finding a cheaper option.

Second, Fatty's Bar, LLC claims that the district court incorrectly focused on the actions and relationship between Fatty's Bar, LLC and Alsco instead of the relationship between Fatty's Bar, LLC and Tons of Fun, LLC[4]. Fatty's Bar, LLC argues that it was a new entity with minimal connections to Tons of Fun, LLC. Yet this argument is again belied by the factual findings of the district court that Tons of Fun, LLC and Fatty's Bar, LLC had material connections before and after Fatty's Bar, LLC took over the operation, not the least of which were the ongoing operation of the bar in the identical leased space Fatty's used, using the same liquor license and equipment that Fatty's used, and using the identical name for the bar.

Third, Fatty's Bar, LLC claims that the district court erred because if it did assume any debt from Tons of Fun, LLC, it was only the initial 60-month contract, and that the auto-renewal clause was not a debt that could be passed on to Fatty's Bar, LLC. The district court rejected this argument, holding that Fatty's Bar, LLC impliedly assumed the entire Agreement, not just the term remaining until March 2016. We agree. To hold otherwise would undermine the basis of successor liability law. For successor liability, "liabilities" assumed include not only outstanding debts, but obligations arising under contracts assumed, including a contingent future liability on a contract. Fletcher, *supra,* § 7115.

Last, Fatty's Bar, LLC argues that even if it were a successor to Tons of Fun, LLC, Fatty's Bar, LLC could not be liable for more than the amount of assets it bought from Tons of Fun, LLC; as such, it argues the district court erred in holding Fatty's Bar, LLC liable for liquidated damages under the Agreement. In support, Fatty's Bar, LLC cites *Radermacher v. Daniels*, where this Court stated, "[t]he law seems to be well settled, that those who take over the business and assets of a dissolved corporation, take it subject to the debts and liabilities of the corporation, to the full extent of the value of the property taken over." 64 Idaho 376, 378, 133 P.2d 713, 715 (1943). The district court rejected Fatty's Bar, LLC's argument as "antiquated and factually distinguishable," noting

---

[4] Fatty's Bar, LLC relies upon *Zantel Marketing Agency v. Whitesell Corporation*, 696 N.W.2d 735 (Mich. Ct. App. 2005) to support its argument as to this point, but in that case the succeeding entity "expressly limited its liabilities in the asset agreement." *Id*. at 741. This holding does not apply to this case because there was no express agreement to limit liabilities between Fatty's Bar, LLC and Tons of Fun, LLC.

14

there was never a claim from Alsco against Tons of Fun, LLC on the Agreement prior to the asset sale. Rather, the breach occurred after Fatty's Bar, LLC terminated the Agreement years after the asset sale. As the party breaching the Agreement, which was valid when impliedly assumed, Fatty's Bar, LLC cannot reasonably limit its damages because the rationale behind this rule simply does not apply here. There is no need to look at what Tons of Fun, LLC would have had to pay due to the breach because the liability belongs to Fatty's Bar, LLC alone. Indeed, the more current and appropriate rule is that

> [a] surviving or consolidated company is liable on the claims against the constituent companies without regard to the amount of assets received from them. This is undoubtedly the rule, although the language used in some older decisions might be construed to indicate a limitation of liability to the property received.

Fletcher, *supra,* § 7119.

Ultimately, we hold that the district court applied appropriate legal standards and acted within the boundaries of its discretion in concluding that Fatty's Bar, LLC impliedly assumed the liabilities under the Agreement. Again, "proof of an implied assumption of contractual liabilities is a heavily fact-intensive exercise." *Cayne*, 125 F. Supp. 3d at 1148. Reviewing the record here, once Fatty's Bar, LLC reopened Fatty's in March 2013, Alsco continued to perform under the Agreement, making weekly deliveries and pick-ups at Fatty's. Fatty's Bar, LLC accepted and paid for these services until March 2017. Fatty's Bar, LLC showed its ability to contact Alsco and modify the Agreement by: (1) notifying Alsco that Fatty's ownership had changed; (2) changing the billing process; and (3) amending the schedules under the Agreement to request new items or add inventory. Fatty's Bar, LLC's acceptance of benefits and performance of obligations under the Agreement, as well as its affirmative acts in alerting Alsco to the existence of a new owner and changing the Agreement, all support the district court's application of legal principles that Fatty's Bar, LLC impliedly assumed the liabilities under the Agreement. The bottom line is that Fatty's Bar, LLC "acquiesce[d] in the terms of the contract" by receiving benefits from Alsco and paying for those benefits for years. *Cayne*, 125 F. Supp. 3d at 1148. The district court did not abuse its discretion in holding that Fatty's Bar, LLC impliedly assumed the Agreement.

D.      **The district court did not err when it determined that the statute of frauds was satisfied for the entire Agreement, including the auto-renewal provision.**

Fatty's Bar, LLC argues that the successor liability claims asserted by Alsco are barred by the statute of frauds. In Idaho, the statute of frauds requires "[a]n agreement that by its terms is not

15

to be performed within a year from the making thereof" to be in writing and subscribed by the party charged with performance of the contract. I.C. § 9-505(1). Below, the district court held that the statute of frauds was satisfied as to Tons of Fun, LLC and Roman, and under the doctrine of successor liability, that satisfaction was imputed to Fatty's Bar, LLC. The court reasoned that to find otherwise would undercut the entire basis of successor liability on contracts, which is grounded on the *lack* of a written contract signed by the successor entity. The district court also relied on *Lehman Brothers Holdings, Inc., v. Gateway Funding Diversified Mortgage Services, L.P.*, as discussed below, for its conclusion that if the contract satisfied the statute of frauds vis-à-vis the predecessor company, then it can be enforced against a successor in interest and does not pose a statute of frauds problem. We agree with the district court's reasoning as applied to the facts here.

In *Lehman Brothers,* the United States District Court for the Eastern District of Pennsylvania considered whether a cause of action for breach of contract could proceed against a purported successor in interest. 942 F. Supp. 2d 516 (E.D. Pa. 2013). Arlington Capital Mortgage Corporation ("Arlington"), a mortgage origination company, entered into a loan purchase agreement with Lehman Brothers Bank ("Lehman"). *Id*. at 520. Under the agreement Lehman agreed to buy mortgage loans "from time to time" from Arlington and Arlington made several representations and warranties. *Id*. Lehman later claimed that several mortgage loans it purchased from Arlington contained various errors and misrepresentations, breaching their agreement. *Id*. Years later, Arlington and Gateway Funding Diversified Mortgage Services, L.P. ("Gateway") entered into an asset purchase agreement, under which Gateway agreed to purchase and assume certain specified liabilities of Arlington. *Id*. Lehman argued that Gateway was liable as Arlington's successor under the de facto merger doctrine. *Id*. at 523. On appeal, the Pennsylvania Court recognized that the purpose behind the de facto merger doctrine is to "avoid the patent injustice which might befall a party simply because a merger has been called something else." *Id*. at 525 (internal citation omitted). The Pennsylvania Court held there was a genuine dispute of material fact about whether the asset purchase agreement led to a continuity of ownership and ultimately a de facto merger. However, the court clarified that if the jury found a de facto merger on remand there would be no statute of frauds problem because by definition Gateway would assume Arlington's written liabilities, even though there was no written agreement between Lehman and Gateway. *Id*. at 533.

16

Fatty's Bar, LLC argues that the district court erred in applying *Lehman Brothers* here because that case turned on the de facto merger exception to successor liability, not the implied assumption of the contract exception – and the district court held that the de facto merger doctrine did not apply in this case.

Fatty's Bar, LLC is correct, *Lehman Brothers* hinges on another exception (the doctrine of de facto merger[5]) to the general rule regarding successor liability, and the district court found that the de facto merger doctrine was not established in this case. Even so, the court in its discretion applied the *Lehman Brothers* rationale as it relates to the statute of frauds in an effort to reach an equitably fair decision.

The dissent likewise opposes the district court's reliance on *Lehman Brothers*. We recognize those concerns, but reiterate that the "fact-intensive exercise" undertaken by the district court lead the court to conclude as a matter of fact and law that the implied agreement exception was warranted and sustained by the facts here. The trial court's conclusion was based not on *Lehman Brothers*, but was informed by the *Lehman Brothers*' underlying rationale in addressing the statute of frauds question here – when the foundation for Fatty's Bar, LLC's liability is *implied*.

Thus, this case hinges on the exception to the general rule based on an implied agreement. That exception to the general rule is widely accepted, and when properly applied, as the district court did here, provides foundation for the conclusion that Fatty's Bar, LLC impliedly assumed the Alsco agreement with all of its provisions. It thus naturally flows from that conclusion that the statute of frauds is not implicated because (1) there was a writing between Alsco and Tons of Fun,

---

[5] The doctrine of de facto merger is an equitable doctrine that recognizes successor liability may attach "where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger." *U.S. v. Sterling Centrecorp Inc*., 960 F. Supp. 2d 1025, 1041 (E.D. Cal. 2013). Courts have considered these factors to determine whether an asset purchase should be characterized as a de facto merger:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is continuity of management, personnel, physical location, assets, and general business operations; (2) There is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; (3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; (4) The purchasing corporation assumes those obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Id*. at 1041–42.

LLC, which Fatty's Bar, LLC assumed; and (2) as the district court found, "[s]ince the parties already expressly agreed in writing to an automatic renewal of the contractual term, the risk of fraud that the signed writing [requirement] is designed to prevent is alleviated." The district court reinforced its decision with the following citation to authorities other than *Lehman Brothers*, which gives added weight to its discretionary reasoning process:

> Although not yet addressed in Idaho, the predominant approach under this circumstance is to hold that the 'renewal' is not within the statute of frauds. *See*, *Signal Mgmt. Corp. v. Lamb*, 541 N.W.2d 449, 454 (N.D. 1995) (collecting cases). In fact, *Ripani v. Liberty Loan Corp.* – cited by Fatty's Bar LLC for the proposition that renewal of a lease in excess of one year is subject to the statute of frauds – held just the opposite. 157 Cal. Rptr. 272 (Cal. Ct. App. 1979). It found that the exercise of an option to renew a lease does not violate the statute of frauds where the original written lease satisfied the statute of frauds. *Id*. This result [is] only logical given the purpose underpinning the statute of frauds. Since the parties already expressly agreed in writing to an automatic renewal of the contractual term, the risk of fraud that the signed writing [requirement] is designed to prevent is alleviated.

We recognize that these cases are distinguishable because they deal with a tenant's ability to exercise an option to extend a lease, while here, the Agreement involved an automatic 60-month extension of linen service. That is a distinction without a difference. Either way, the rationale underscores whether the *original agreement* satisfies the statute of frauds. The agreement that the trial court found Fatty's Bar, LLC impliedly assumed included multiple provisions binding on Fatty's Bar, LLC, including the auto-renewal provision. Indeed, in denying Fatty's Bar, LLC's motion for reconsideration, the district court held: "[i]f anything, the rule cited in *Lehman Bro[thers]* is even more applicable in an implied assumption situation, where—by definition—the assumption is based on words and conduct, not a writing." We agree with this rationale on these facts, and therefore affirm the district court's exercise of discretion as it applies to the statute of frauds.

### E. Fatty's Bar, LLC's remaining arguments about the Agreement lack merit.

Fatty's Bar, LLC makes three other arguments in support of its position it should not be liable to Alsco under the Agreement: (1) that Fatty's Bar, LLC is not liable on the renewed Agreement because there was no "meeting of the minds" with Alsco on the material terms; (2) the Agreement was not assignable because it was a personal services contract; and (3) the Agreement was subject to a part-performance exception to the statute of frauds. Fatty's Bar, LLC's arguments

overlook the foundational conclusion that undergirds Alsco's claims here – there was no new contract created between Alsco and Fatty's Bar, LLC when Fatty's reopened in March 2013; instead, the written Agreement was already signed and in place when Fatty's Bar, LLC impliedly assumed it. Fatty's thus also accepted all of the Agreement's terms, including its auto-renewal provision.

Thus, these claims that hinge on the failure to form a "new" agreement do not apply here based on the findings of the district court. Fatty's Bar, LLC impliedly assumed the prior, written agreement, based on its words and actions as set forth above. To find otherwise would require us to reweigh the evidence and contravene the district court's factual findings – which we cannot do.

**F.      The district court properly awarded Alsco liquidated damages under the Agreement.**

Fatty's Bar, LLC briefly argues that the district court should not have awarded liquidated damages here because Alsco did not try to introduce any evidence regarding its actual damages, and failed to show that Fatty's Bar LLC's liquidated damages (which it claims were $21,000[6]) bore any reasonable relationship to Alsco's actual damages.

Liquidated damages clauses are enforceable in Idaho so long as two requirements are satisfied: "First, an accurate determination of the actual damages that might be incurred upon breach must be difficult or impossible to determine. Second, the amount of the liquidated damages must bear a reasonable relationship to the actual damages anticipated to be incurred." *Margaret H. Wayne Tr. v. Lipsky*, 123 Idaho 253, 258–59, 846 P.2d 904, 909–10 (1993). That said, a liquidated damage clause will not be enforced if it is found to be a penalty. *Id*. at 259, 846 P.2d at 910.

"The party asserting that a liquidated damages clause is unenforceable bears the burden of proving that the liquidated damages are not reasonably related to actual damages, and/or are exorbitant and unconscionable." *Schroeder v. Partin*, 151 Idaho 471, 476, 259 P.3d 617, 622 (2011) (citing *Howard v. Bar Bell Land & Cattle Co.*, 81 Idaho 189, 197, 340 P.2d 103, 107 (1959)). If a liquidated damages clause is unenforceable, the non-breaching party is entitled to compensation for its actual damages. *Id*. (citing *City of Idaho Falls v. Beco Const. Co., Inc.*, 123 Idaho 516, 522, 850 P.2d 165, 171 (1993)).

---

[6] The district court actually awarded Alsco $23,206.46 in liquidated damages.

Fatty's Bar, LLC argues that liquidated damages were not appropriate based on Alsco's failure to introduce any evidence of its actual damages. First, we note that it was Fatty's Bar, LLC, not Alsco, that bore the burden of proving that the liquidated damages were not reasonably related to Alsco's actual damages. *Schroeder*, 151 Idaho at 476, 259 P.3d at 622. The district court rejected Fatty's Bar, LLC's argument, holding this is the very purpose of a liquidated damages provision – to fix the amount of damages that are anticipated but difficult to establish. Indeed, in evaluating the validity of a liquidated damages clause the focus is on whether the provision bears a *reasonable relation* to the anticipated damages occasioned by a breach, not that a party must prove the precise amount of its actual damages. Such a requirement would do away with the function of liquidated damages clauses.

Under the Agreement, Alsco was responsible for supplying exclusive goods and services that could be changed depending on Fatty's Bar, LLC's needs. The district court held this led to fluctuating invoice amounts, making actual damages difficult to prove, and a liquidated damages provision appropriate. An accurate determination of damages caused by early termination would be fraught with speculation on what Fatty's Bar LLC's future needs would be under the remaining life of the Agreement and how well Alsco could mitigate damages by locating a new customer in Fatty's Bar, LLC's place.

We agree with the district court's application of these legal principles, concluding that damages would be difficult to calculate based on Fatty's Bar, LLC's ability to amend the goods and services received under the Agreement. Further, the liquidated damages provision under the Agreement bore a reasonable relation to the actual damages because it was calculated based on the actual amounts charged for the previous ten weeks. Under the Agreement, early termination constitutes a breach, and that the breaching party is liable to pay "a sum equal to the number of unexpired weeks remaining in the term then in effect multiplied by fifty percent (50%) of the average weekly charge for goods and services during the 10 weeks immediately preceding such failure to pay, breach or premature termination." When Fatty's Bar, LLC discontinued Alsco's services, there were 207 weeks left under the Agreement. Alsco presented evidence that the average weekly invoice was $224.22, thus, if the Agreement was paid through the full term Alsco would have received $46,412.92. Under the Agreement, the liquidated damages constituted half of that amount—$23,206.46. The figures establish the reasonable relationship between actual and liquidated damages. Thus, we affirm the district court's award.

**G.    The district court did not abuse its discretion when it awarded Alsco costs and attorney fees as the prevailing party.**

Fatty's Bar, LLC argues the district court erred in awarding Alsco attorney fees on its successor liability claim because Alsco should not have been the prevailing party. Fatty's Bar, LLC also challenges the district court's apportionment of fees, 80% to Fatty's Bar, LLC and 20% to Roman, because Alsco did not show how fees were incurred with respect to each defendant.

"[A] trial court is vested with broad discretion to determine the prevailing party in a multiple claim action." *Int'l Eng'g Co., Inc. v. Daum Indus., Inc.*, 102 Idaho 363, 366, 630 P.2d 155, 158 (1981). "The trial court may determine that a party to an action prevailed in part and did not prevail in part, and on so finding may apportion the costs between and among the parties in a fair and equitable manner after considering all of the issues and claims involved in the action and the resulting judgment or judgments obtained." I.R.C.P. 54(d)(1)(B).

This Court reviews a district court's award of attorney fees for an abuse of discretion. *SilverWing at Sandpoint, LLC v. Bonner Cnty.*, 164 Idaho 786, 794, 435 P.3d 1106, 1114 (2019). To determine whether an abuse of discretion occurred, this Court applies the four-part *Lunneborg* test, 163 Idaho at 863, 421 P.3d at 194, stated earlier. "A party claiming attorney's fees must assert the specific statute, rule, or case authority for its claim." *Eighteen Mile Ranch, LLC v. Nord Excavating & Paving, Inc.*, 141 Idaho 716, 720, 117 P.3d 130, 134 (2005) (quoting *MDS Invs., L.L.C. v. State*, 138 Idaho 456, 465, 65 P.3d 197, 206 (2003)). Idaho Code section 12-120(3) provides that "[i]n any civil action . . . in any commercial transaction unless otherwise provided by law, the prevailing party shall be allowed a reasonable attorney's fee to be set by the court, to be taxed and collected as costs." I.C. § 12-120(3). Attorney fees also may be awarded to the prevailing party when the parties contemplated such fees in the contract. *Zenner v. Holcomb*, 147 Idaho 444, 452, 210 P.3d 552, 560 (2009).

Alsco requested attorney fees under the Agreement as well Idaho Code sections 12-120(1), 12-120(3), and/or 12-121. The district court declined to award attorney fees under Idaho Code section 12-120(1) or section 12-121, but held that Alsco was entitled to attorney fees under the Agreement and under section 12-120(3).

The district court held that because Fatty's Bar, LLC impliedly assumed the Agreement with Alsco it was bound by the following attorney fee provision in the Agreement:

21

15. **Enforcement of Agreement**. In the event Supplier is required to enforce, defend and/or protect its rights under the Agreement, Customer agrees that in addition to all other amounts which it might be required to pay, it will pay Supplier's costs of enforcing, defending and/or protecting its rights under this Agreement, including reasonable collection fees, attorney's fees and costs.

The district court also held attorney fees were appropriate under Idaho Code section 12-120(3) and I.R.C.P. 54(e)(1) because Alsco delivered goods to Fatty's Bar, LLC for use in its business and Fatty's Bar, LLC paid for such goods, which constituted the very definition of a commercial transaction under section 12-120(3).

Fatty's Bar, LLC's challenge on appeal is that the district court should not have awarded any damages to Alsco under its successor liability claim, and therefore Alsco should not have been entitled to prevailing party fees under the contract or under section 12-120(3). Because we have affirmed the district court holding that Fatty's Bar, LLC impliedly assumed the Agreement, we likewise affirm the district court's award of attorney fees under the Agreement and/or section 12-120(3).

Fatty's Bar, LLC also disputes how the district court apportioned fees between Fatty's Bar, LLC and Roman. After concluding that Alsco was entitled to an award of attorney fees as the prevailing party, the district court apportioned 80% of the attorney fees to Fatty's Bar, LLC and 20% to Roman. On appeal, the LLC argues that the district court abused its discretion and did not act reasonably because Alsco did not apportion its billing entries by defendant. Even so, the district court apportioned the attorney fees as it did after concluding that the trial was focused largely on Fatty's Bar, LLC's liability and, as a result, most of Alsco's work was dedicated to Fatty's Bar, LLC, not Roman. For example: Fatty's Bar, LLC first asserted counterclaims and demanded a jury trial against Alsco, requiring Alsco to respond to the counterclaims and prepare jury instructions; Fatty's Bar, LLC issued discovery requests to Alsco; Fatty's Bar, LLC moved for summary judgment on Alsco's breach of contract claim against it; and Fatty's Bar, LLC moved for reconsideration and objected to Alsco's request for attorney fees and costs.

Roman took no similar countermeasures to defend against Alsco's claims. He did not assert counterclaims, demand a jury trial, issue discovery or move for summary judgment. The district court recognized that Roman conceded early that he signed the Agreement as an employee of "Fatty's," he just did not realize that he was signing a contract. The record supports the district court's conclusion that most of the work Alsco's attorneys did pertained to Fatty's Bar, LLC. The

district court did not abuse its discretion in the way it chose to equitably apportion attorney fees between the two defendants.

## H. Fatty's Bar, LLC's request for attorney fees on remand is moot.

Fatty's Bar, LLC argues that this Court should vacate the award of damages to Alsco on its successor liability claim and award Fatty's Bar, LLC its costs and attorney fees as the prevailing party under Idaho Code section 12-120(3). Because we have affirmed the district court's holding that Fatty's Bar, LLC was a successor in interest to Tons of Fun, LLC, and liable on the Agreement, this issue is moot.

## I. Alsco is awarded attorney fees on appeal.

Both parties request attorney fees on appeal. Fatty's Bar, LLC requests attorney fees under Idaho Code section 12-120(3) because of the commercial transactions between the parties, and argues section 12-120(3) is appropriate even if the Court finds that the Agreement with Alsco is not enforceable. Additionally, Fatty's Bar, LLC requests an award of attorney fees under Idaho Code section 12-121 for any frivolous, unreasonable, or unfounded arguments by Alsco on appeal. Fatty's Bar, LLC is not the prevailing party; thus, it has no right to attorney fees on appeal.

Alsco argues that it is entitled to attorney fees on appeal under the Agreement which provides: "In the event Supplier is required to enforce, defend and/or protect its rights under the Agreement, Customer agrees that in addition to all other amounts which it might be required to pay, it will pay supplier's costs of enforcing, defending and/or protecting its rights under this Agreement, including reasonable collection fees, attorneys' fees and costs." Alsco also argues that the dispute between the parties falls under section 12-120(3) because the case specifically arose out of a contract for the supply of goods and services, and was a commercial transaction as the Code defined.

Attorney fees under Idaho Code section 12-120(3) are appropriately awarded to the prevailing party "[i]n any civil action . . . in any commercial transaction. The term "commercial transaction" is defined to mean all transactions except transactions for personal or household purposes. *Id.* "The test for determining whether this provision authorizes an award of attorney fees is 'whether the commercial transaction comprises the gravamen of the lawsuit.'" *Erickson v. Flynn*, 138 Idaho 430, 436, 64 P.3d 959, 965 (Ct. App. 2002) (quoting *Brower v. E.I. DuPont Nemours and Co.*, 117 Idaho 780, 784, 792 P.2d 345, 349 (1990).

23

Alsco is entitled to attorney fees on appeal under the Agreement and Idaho Code section 12-120(3) for the same reasons identified by the district court in awarding fees below. Because Fatty's Bar, LLC impliedly assumed the Agreement with Alsco, it is bound by the attorney fee provision in it. Attorney fees under section 12-120(3) are also appropriate because Alsco delivered goods to Fatty's Bar, LLC for use in its business, and Fatty's Bar, LLC paid for such goods, which constitutes a commercial transaction.

## VI. CONCLUSION

As noted at the start of this Opinion, we address broad legal principles in a narrow way. On the facts of this record, the district judge did not abuse its discretion. We therefore affirm the judgment and award Alsco attorney fees and costs as the prevailing party in this appeal.

Justices BRODY and MOELLER, CONCUR.

STEGNER, J., dissenting.

I respectfully dissent. I believe that "successor liability" does not remove this contract from the applicability of Idaho's statute of frauds. Consequently, Fatty's Bar has a bona fide legal defense to Alsco's suit. In particular, I believe that the district court erred as a matter of law in applying Pennsylvania law to this case while at the same time ignoring extant Idaho law.

The district court's analysis of the statute of frauds is sparse, but what is there is faulty. The district court wrote that "[t]he issue is whether, in cases of successor liability, an assumed agreement falling within the statute of frauds must be separately subscribed by the successor business to be enforceable. Logically, the answer must be no. To find otherwise would undercut the entire concept of successor liability on contracts." This is the extent of the district court's analysis. While the district court finds this "logical," it is anything but. It does not explain how this is "logical" other than to say that application of the statute of frauds "would undercut the entire concept of successor liability." While I agree the application of the statute of frauds undercuts successor liability, I think this is *precisely* its intended effect. This is not the application of logic. It is simply arriving at a predetermined result and calling it "logical."

The district court went on to cite *Lehman Brothers Holdings, Inc. v. Gateway Funding Diversified Mortgage Services, L.P.*, 942 F. Supp. 2d 516, 533 (E.D. Pa. 2013), for the proposition that "if the contract satisfied the statute of frauds vis-à-vis the predecessor company, then it can be enforced against a successor in interest and does not pose a statute of frauds problem." First, the

24

case relied upon, *Lehman Brothers*, is not binding authority in Idaho. (It is noteworthy that it would not even be binding authority in Pennsylvania state court.) Second, the facts in *Lehman Brothers* are readily distinguishable from the facts in this case. There, the parties agreed that Pennsylvania law applied. *Lehman Bros.*, 942 F. Supp. 2d at 523 n.4. The liability rejected by the defendant was the obligation to purchase, "from time to time," mortgage loans from a third party. *Id.* at 520. The predecessor and successor entities had entered into an asset purchase agreement in which the successor had *explicitly* agreed to assume certain specified liabilities of its predecessor. *Id.* at 521. *Lehman Brothers* also involved a *de facto* merger. *Id.* at 523. None of these facts are comparable to this case. I accordingly cannot agree with the district court's application—and the majority's acceptance—of the holding in *Lehman Brothers*.

The majority suggests that the district court was merely "informed" by *Lehman Brothers*, stating that the district court engaged in a "fact-intensive exercise" to conclude that the statute of frauds did not apply in this context. I do not agree this is what the district court did or in how it is described by the majority. The district court *first* concluded that applying the statute of frauds in the context of successor liability did not make logical sense, citing *Lehman Brothers*. To be clear, this particular conclusion of law has nothing to do with a "fact-intensive exercise." It is a conclusion of law, plain and simple. The legal question presented is quite straightforward: either the statute of frauds applies when a party seeks to impose successor liability or it does not. Without this legal conclusion, the district court's factual findings are immaterial. The district court's legal conclusion lacks any support of Idaho case law. I would not affirm the district court's summary conclusion that the statute of frauds does not apply in the context of successor liability.

This analysis continues with a review of the law of Idaho. The applicable statute, Idaho Code section 9-505(1), states that "[a]n agreement that by its terms is not to be performed within a year from the making thereof" must be "in writing and subscribed by the party charged[.]" I.C. § 9-505(1). I have already acknowledged that if Idaho's statute of frauds applies "it would undercut the entire concept of successor liability." However, I do not think that is a principled reason to ignore an applicable Idaho statute. If statutes could be blithely ignored when they impair new theories of liability (sought to be created by courts), there is little to prevent our overruling any statute.

There is also no question that Idaho's statute of frauds applies to the kind of contract in this case. In *Allen v. Moyle*, 84 Idaho 18, 23, 367 P.2d 579, 582 (1961), we stated, "[t]he rule is firmly

25

established by the great weight of authority that a contract for personal services which by its terms are to be rendered for a period in excess of one year is within" the statute of frauds. This is not a contract for goods to which the UCC applies. *See* I.C. § 28-2-105(1). Title to the items provided by Alsco never passed to Fatty's Bar. This is a contract for services that cannot be performed within a year. It is uncontroverted that no one representing Fatty's Bar signed this contract. I concede a representative of Fatty's Bar signed a similar contract relating to a different bar; however, the statute of frauds does not have an exception that allows notice of a similar provision to suffice. If all that must be shown to avoid the statute of frauds is notice of a similar provision, the statute of frauds would not mean what it says: If you want to enforce a contract that cannot be performed within one year, it has to be in writing and signed by the party against whom enforcement is sought. I.C. § 9-505. That simply did not happen here.

If the statute of frauds *does* apply, Alsco argues, the contract is taken outside its reach by part performance by the successor entity. This is not the law. In *Allen*, we observed:

> As a general principle, the equitable doctrine of part performance is *not applicable* to a contract which is within the statute of frauds as one not to be performed within a year. The mere part performance of such a contract does not take it out of the operation of the statute or permit a recovery under the contract for any part of the contract remaining executory. In support of the general rule, it is said that to hold that part performance is performance would be a nullification of the statute.

*Allen*, 84 Idaho at 23, 367 P.2d at 582 (italics added) (quoting 49 Am. Jur. *Statute of Frauds* § 497 (1943)). We also held in *Allen* that the equitable doctrine of part performance does not apply where only money damages are sought. *Id.* Only money damages are being sought by Alsco. Alsco has invoked the equitable doctrine of part performance in precisely the contexts we have specifically rejected it in the past: (1) in a contract for personal services that cannot be performed within a year; and (2) only money damages are being sought.

For these reasons, I would hold that the statute of frauds applies to this contract, notwithstanding the claimed applicability of the "successor liability" doctrine. Further, Alsco has not shown that the statute of frauds was in any way satisfied. I cannot concur in the majority's analysis and result; consequently, I respectfully dissent.

Chief Justice BURDICK, CONCURS.